**UNITED STATES of America,
Appellee,**

v.

**Larry C. SMITH, etc., Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Marshall CARTER, etc., Appellant.**

**Nos. 71–1622, 71–1623.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1972.

Decided June 27, 1972.

Rehearing and Rehearing En Banc
Denied in No. 71–1622
July 21, 1972.

Ronald I. Meshbesher, Minneapolis, Minn., for appellants.

Peter J. Thompson, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before VOGEL, BRIGHT, and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

Appellants Larry Smith and Marshall Carter appeal from their convictions for possessing, with intent to distribute, heroin and cocaine in violation of 21 U. S.C. § 841(a)[1] Circuit Judge Heaney, sitting by assignment, presided over appellants' jury trial. District Judge Larson, however, heard and decided a pretrial motion to suppress items of physical evidence seized under the authority of a search warrant. The propriety of Judge Larson's decision on this pretrial motion constitutes one of the principal issues for our consideration on this appeal.

Appellant Smith[2] makes the following specific contentions: 1) a competent affidavit did not support the search warrant; 2) the search was unlawful because the warrant did not particularly describe the premises; 3) during the search, police officers seized appellant Smith's personal papers unlawfully; 4) the trial court erred in instructing on the prosecution's burden of proof; 5) the evidence was insufficient to support Smith's conviction; 6) the trial court erred in refusing to order the government to disclose the identity of its informant; 7) the trial court erred in denying Smith's motion to preclude the introduction of evidence of his prior convictions to impeach his credibility; 8) the trial court erred in refusing to grant a mistrial after the prosecuting attorney alluded to the fact that, upon conviction, the judge might grant probation; 9) the court erred in allowing the prosecutor to

---

1. Section 841(a) provides in pertinent part:

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
> (1) to manufacture, distribute, or dispense or possess with intent to manufacture, distribute, or dispense, a controlled substance * * *.

Under the provisions of 21 U.S.C. § 812, heroin is a Schedule I controlled substance and cocaine is a Schedule II controlled substance.

2. Appellant Carter filed no separate brief but relies here upon the appeal brief filed by his co-appellant Smith to the extent that Smith's contentions apply.

cross-examine a defense witness as to the amount of certain bank deposits made by Smith. We reject these contentions and affirm the convictions.

On May 14, 1971, federal and state law enforcement officers searched a second floor apartment of the premises located at 678 Concordia Avenue, St. Paul, Minnesota. The building is situated on the corner of the block with the downstairs bearing the Concordia Avenue address while access to the apartment upstairs is through a doorway having a St. Albans Street address. The officers found in this apartment a substantial quantity of foil-wrapped packages containing heroin and cocaine. The search also uncovered packaging materials and cutting agents used in the preparation of individual doses of narcotics. In the northeast bedroom of the apartment, officers found and seized personal papers belonging to Smith, including business correspondence, checks, bank deposit slips, and credit cards. In addition, the officers found in this bedroom a quantity of heroin, hashish, and marijuana located in a pair of socks hanging by a rope inside a ventilator shaft.

Smith, who owned the building and operated a cafe located on the ground level, denied that he lived in the upstairs apartment. The upstairs telephone and utilities services, however, were listed in his name. Defendant Carter admitted occupying a second bedroom on the west side of the apartment.

We, therefore, turn our attention to the incidents surrounding the issuance of the search warrant in order to examine appellants' claim that the trial court erred in denying their motion to suppress as evidence the items seized during the search. The warrant here in question was issued pursuant to an affidavit prepared by a special agent for the Federal Bureau of Narcotics and Dangerous Drugs. That affidavit, in material part, recited the following:

> On May 13, 1971, I interviewed a confidential informant who advised (sic) that within the last two days he went to 678 Concordia, St. Paul, Minnesota with a second individual. The informant previously advised the second individual that the informant wished to buy heroin. The second individual advised that Larry Smith had heroin and cocaine. The second individual went to the second floor of 678 Concordia Avenue. The second individual returned and gave the informant a foil package of heroin. The informant advised that Larry Smith resides on the second floor of 678 Concordia. I ran a Narcodal test on the powder which the informant obtained. The test indicated the powder was an opiate derivative. The second individual advised the informant that in addition to heroin, there was cocaine on the second floor.
>
> The informant has previously provided reliable information to agents of the Bureau of Narcotics and Dangerous Drugs. On one occassion (sic) within the last two weeks a search warrant was issued pursuant to the informants (sic) information and narcotics were seized. On another occassion (sic) within the last month the informant introduced me to an individual who he said was a dealer. I purchased heroin from the individual.

Appellants argue that this affidavit failed to establish the requisite probable cause for the issuance of a search warrant since it "relied upon information supplied to a government informant by an anonymous second party whose reliability was in no way established * * *."

█ It is uncontroverted that an affidavit can show probable cause even when based on hearsay statements of an anonymous informant, under the rule enunciated in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), as follows:

> Although an affidavit may be based on hearsay information and need not reflect direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d

697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant * * * was "credible" or his information "reliable." [*Id.* at 114, 84 S.Ct. at 1514]

Appellants insist, however, that the hearsay based upon hearsay contained in this affidavit failed to establish probable cause because it did not satisfy the *Aguilar* requirements with respect to the second anonymous individual. Appellants concede the credibility of the affiant's direct informant, but maintain that since no reliance should be placed on the hearsay information provided by the second individual, the magistrate lacked sufficient credible information to justify the issuance of the search warrant.

We do not agree. It is not unusual for an affidavit of a law enforcement officer to contain hearsay information from an informant, which, in turn, is based on other information gathered by that informant. *See* Spinelli v. United States, 393 U.S. 410, at 416–417, 89 S.Ct. 584, 21 L.Ed.2d 637, *discussing* Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Therefore, when a magistrate receives an affidavit which contains hearsay upon hearsay, he need not categorically reject this double hearsay information. Rather, he is called upon to evaluate this information as well as all other information in the affidavit in order to determine whether it can be reasonably inferred "that the informant had gained his information in a reliable way." *Spinelli, supra,* 393 U.S. at 417, 89 S.Ct. at 589. The magistrate must canvass the affidavit and the informer's tip as a whole and measure it against *Aguilar* standards in order to assess its probative value.

We pointed out in McCreary v. Sigler, 406 F.2d 1264, 1268 (8th Cir. 1969).

that the *Aguilar* requirements "must be weighed with the added analysis of *Spinelli* * * *. Under *Spinelli* the magistrate must know that he is relying on information of substance, not upon "casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." 393 U.S. at 416, 89 S.Ct. at 589; *McCreary, supra* 406 F.2d at 1268.

In his concurring opinion in *Spinelli,* Mr. Justice White made these appropriate remarks on the problem of an affidavit presenting an informant's hearsay based on hearsay gathered by that informant:

If the affidavit rests on hearsay— an informant's report—what is necessary under *Aguilar* is one of two things: the informant must declare either (1) that he has himself seen or perceived the fact or facts asserted; or (2) that his information is hearsay, but there is good reason for believing it—perhaps one of the usual grounds for crediting hearsay information. The first presents few problems: since the report, although hearsay, purports to be first-hand observation, remaining doubt centers on the honesty of the informant, and that worry is dissipated by the officer's previous experience with the informant. The other basis for accepting the informant's report is more complicated. But if, for example, the informer's hearsay comes from one of the actors in the crime in the nature of admission against interest, the affidavit giving this information should be held sufficient.

I am inclined to agree with the majority that there are limited special circumstances in which an "honest" informant's report, if sufficiently detailed, will in effect verify itself—that is, the magistrate when confronted with such detail could reasonably infer that the informant had gained his information in a reliable way. [393 U.S. at 425, 89 S.Ct. at 593]

The affidavit in this case clearly justified the issuance of the warrant un-

der the test of *Aguilar* as that test has been further explicated in *Spinelli* and United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).[3] The affiant here attested to the credibility of his informant and related underlying circumstances which would lend reliability to the information within the informant's personal knowledge. Of course, this vouching by the affiant for his informant's reliability in no way attests to the veracity of the second individual. *Cf. Spinelli, supra*, 393 U.S. at 415–416, 89 S.Ct. 584; *Harris, supra*, 403 U.S. at 579, 91 S.Ct. 2075. The crucial question here, however, is not, as suggested by appellants, whether the affiant can attest to the reliability or credibility of the second individual, but whether the information furnished by the informant, taken as a whole in light of the underlying circumstances, can be said to be reliable. The affidavit need only establish the *probability* of criminal activity and secreting of evidence on specific premises, not proof beyond a reasonable doubt. *See, e. g., Harris, supra*, 403 U. S. at 584, 91 S.Ct. 2075; *Spinelli, supra*, 393 U.S. at 419, 89 S.Ct. 584; *Jones*, 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960); Draper v. United States, *supra*, 358 U.S. at 311–312, 79 S.Ct. 329 (1959); Brinegar v. United States, 338 U.S. 160, 172–173, 69 S.Ct. 1302, 93 L. Ed. 1879 (1949); McCreary v. Sigler, *supra*, 406 F.2d at 1268.

■ We examine the affidavit in that light. Without reliance upon hearsay provided by the second individual, the informant was able to relate the following information: 1) within the preceding two-day period he went to 678 Concordia Avenue accompanied by a second individual; 2) he knew that defendant Smith resided in the second floor apart-

ment; 3) the second individual told the informant that he could acquire heroin for the informant; 4) the second individual went to the Smith apartment and returned with a foil-wrapped package; 5) the package, in fact, contained an opiate derivative. The second individual's hearsay added only two items of information: 1) defendant Smith possessed cocaine in addition to heroin; and 2) Smith lived in the apartment in question. The informant directly corroborated the latter information in his own statement.

We believe that the facts related by the informant alone implied that narcotics were being kept at the designated location. Here, however, the magistrate also had before him the additional information from the second individual which carried probative value when considered with the information provided by the informant from his personal knowledge. The informant's detailed recitation of matters within his personal knowledge, and his account of his activities with the second individual, in part corroborative of the second individual's information, served to explain why that information was reliable. *Cf. Spinelli, supra*, 393 U. S. at 416, 89 S.Ct. 584. We hold, therefore, that the affidavit as a whole furnished probable cause for the issuance of the warrant under *Aguilar* and *Spinelli*.

■ As a further attack on the validity of the search warrant, the appellants contend that the place to be searched was inadequately described by reference to 678 Concordia Avenue, when, in fact, the entrance to the second floor apartment was at 352 St. Albans. We reject this argument. The building's ground floor address is 678 Concordia. The affidavit described the locus of the pro-

---

3. In *Harris*, the plurality opinion of the Chief Justice distinguished the facts from those in *Spinelli* on the ground that the warrant in *Harris* was found valid because the informant's tip "recount[ed] personal and recent observations by an unidentified informant of criminal activity," thus showing that the informa-

tion had been gained in a reliable manner. These facts served to distinguish the tip in *Harris* from that held insufficient in *Spinelli*, in which the affidavit failed to explain how the informant came by his information, *Spinelli, supra*, 393 U.S. at 416, 89 S.Ct. 584. United States v. Harris, 403 U.S. at 579, 91 S.Ct. 2075.

posed search as "the premises known as the second floor of 678 Concordia Avenue, St. Paul, Minnesota." This language aptly described the particular place to be searched and no other, and thus satisfied the requirements of the Fourth Amendment.

Finally in attacking the propriety of the searches and seizures under the warrant, appellant Smith contends that the officers improperly seized items not enumerated in the warrant. The warrant referred only to heroin and cocaine. In addition to these narcotic drugs, the officers seized paraphernalia used in cutting and preparing individual doses of narcotics. This they were entitled to do, and such items were properly admitted into evidence. United States v. Cox, 462 F.2d 1293, 1306 n. 26 (8th Cir. June 5, 1972); United States v. Bridges, 419 F.2d 963, 967 (8th Cir. 1969).

The record shows that the officers also seized certain personal papers belonging to appellant Smith including a document purporting to be a lease of the apartment from Smith to Carter. The government sought permission to introduce some of these papers in order to establish Smith's control of the premises. Smith's attorney objected to the admission of such evidence, except for the lease between Smith and Carter to show an absence of control by Smith. Judge Heaney, in a conference with counsel, indicated that he would admit into evidence this lease and certain other papers bearing solely on the question of control of the premises.

Smith's attorney made the following statement in response to this ruling of the trial court: "I have no objection to that ruling. I think it is appropriate * * *." In light of this statement, we have some doubt as to whether appellant Smith preserved any error even though his counsel, with the consent of the court, noted a record exception to this ruling and asserted a "standing objection" to the introduction in evidence of these items. We have, however, considered the merits of this exception. We are satisfied that the items in question were subject to seizure under the "plain view" doctrine. In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), Mr. Justice Stewart, writing for a plurality of the court, discussed this doctrine:

> An example of the applicability of the "plain view" doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character.
>
> \* \* \* \* \* \*
>
> \* \* \* The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to unlawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges. Id. at 465–466, 91 S.Ct. at 2037.

The record here satisfies the criteria necessary for application of this "plain view" doctrine. The law enforcement officers, while in the process of legally searching for narcotics, uncovered the narcotics, and in the course of their search, discovered certain papers which served to show that Smith occupied the premises.

Accordingly, we sustain the trial court with respect to its rulings on the admissibility of this questioned evidence. We also reject appellants' attack upon the sufficiency of the evidence to support their convictions. The discovery of large quantities of heroin and cocaine prepared and packaged for individ-

ual consumption, together with the other corroborating evidence, served as an appropriate basis for the jury to conclude, as it did, that the defendants possessed heroin and cocaine with the intent to distribute them. We have also examined the other issues in this appeal, and find them to be without substantial merit.[4]

Affirmed.

4. (a) The trial court gave a standard instruction on burden of proof. *See* Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Contrary to the assertion of the appellant, the trial court did not need to instruct the jury more particularly upon the probative force of circumstantial evidence. United States v. Jones, 418 F.2d 818, 825–826 (8th Cir. 1969).

(b) Contrary to appellant's contention, the principles of Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), do not apply to the facts here; the government was, therefore, not required to disclose the identity of its informer.

(c) The trial court committed no error in refusing to preclude the government from using Smith's prior convictions for impeachment purposes if he chose to testify. *See* United States v. Scarpellino,

431 F.2d 475 (8th Cr. 1970); United States v. Leach, 429 F.2d 956 (8th Cir. 1970). In this case, Judge Heaney advised Smith's counsel that if his client chose to testify, he would permit the government to show his three prior felony convictions and the dates of those convictions, but nothing more than this. Appellant Smith declined to take the stand. We find no error in this ruling even under the *Luck* doctrine, Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), whose principles the appellant asks that we apply here.

(d) We are further satisfied that the instructions to the jury otherwise were proper and served to obviate any prejudice which might have been created by the prosecutor's arguments or his cross-examination of the defense witness with respect to the amounts of certain bank deposits made by Smith.