UNITED STATES of America,
Appellant,

v.

James MARIHART et al., Appellees.

No. 72–1258.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1972.

Decided Dec. 26, 1972.

Robert L. Sikma, Asst. U. S. Atty., Sioux City, Iowa, for appellant.

Donald W. Sylvester and Donald E. O'Brien, Sioux City, Iowa, for appellees.

Before MATTHES, Chief Judge, and MEHAFFY, GIBSON, LAY, HEANEY, BRIGHT, ROSS and STEPHENSON, Circuit Judges, en banc.

MATTHES, Chief Judge.

The defendants (appellees) stand jointly charged in a four count indictment returned on March 22, 1972, with possessing four firearms which were transported in and affected interstate commerce in violation of Tit. 18 App. U.S.C. § 1202(a)(1).[1] On April 14, 1972, the defendants filed a joint motion to suppress the firearms described in the indictment on the grounds, inter alia, that the weapons were obtained as the result of an illegal search and seizure in violation of the Fourth Amendment to the United States Constitution and because the information presented to the magistrate who issued the search warrant did not sufficiently delineate the "informant's" source of knowledge as required by Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The district court entered an order suppressing the firearms and this appeal followed.

## I. BACKGROUND

The application for the search warrant was made on October 20, 1971, in the Municipal Court of Sioux City, Iowa, by Francis O'Keefe, Captain of Detectives of the Sioux City police force. The application was supported by O'Keefe's affidavit, which is reprinted in full in the margin,[2] and his oral testimony given under oath before the issu-

---

1. Each count charges possession on October 20, 1971, of a different firearm, and also alleges all of the defendants have previously been convicted of a felony.

2. The body of Captain O'Keefe's affidavit recited as follows:

I, FRANK O'KEEFE, being first duly sworn on oath state as follows:

THAT I am a Captain in Charge of the Detective Bureau, Sioux City Iowa Police Department.

THAT on 10–16–71 between 7:30 P.M. and 8:45 P.M. the home of GEORGE A. LORENGER, 1000 South Carnelia was burglarized. Taken in this burglary were thirty-three (33) firearms consisting of hand guns, shotguns, and rifles.

I received information from a reliable confidential informant who stated that the following men were involved in this burglary: JAMES MARIHART, EDWIN W. KINSLEY, AND MICHAEL GEREAU. At the time of this burglary, these men were driving a 1962 Blue Ford Station Wagon, 1971 Plates Iowa 47–4556. At the time, this car was registered to RAY MAGNUSON. This car was used in the commission of this crime.

THAT since that time I received the following information from DAVE OXLER, SPECIAL AGENT FBI who stated that between 11:00 A.M. and 11:30 A.M. Wednesday, 10–20–71, that he had occasion to be in the area of the 1800 Block Jackson. That while at this location, he saw the blue 1962 Ford Station Wagon License Number 47–4556 stop in front of 1807 Jackson. That there were three men in this vehicle believed to be the men named in this affidavit and who perpetrated this crime. That these men unloaded a large pasteboard box approximately five feet in length, and it appeared to have tape around it. This blox [sic] is believed to contain some of the firearms which were stolen from the residence of GEORGE LORENGER on 10–16–71. MR. OXLER stated that these three men had difficulty carrying this box into the residence at 1807 Jackson. He stated they entered the north door of this multiple dwelling. Further investigation revealed that this door leads to Apartment No. 2, and this apartment is vacant.

We have reason to believe that these weapons are now concealed in this vacant apartment. A check with MARVIN DICUS, Apartment No. 6, 1807 Nebraska revealed that this multiple dwelling is under the custody and control of RAY MAGNUSON.

THAT DAVE OXLER is familiar with the vehicle and persons named herein, concerning investigations being made by the FBI.

(s) Frank O'Keefe
CAPTAIN FRANK O'KEEFE
COMMANDING OFFICER
DETECTIVE BUREAU

ing magistrate.[3] His live testimony contained the supplementing information that he had been told by three separate police officers that each had received informer tips identical to that recited in the affidavit; that FBI Special Agent Oxler and Sioux City Lieutenant Larson had received tips from the same informant; and that one Sergeant Stewart of the Sioux City police had received the identical tip from another informant. O'Keefe further testified that he had twice interviewed the informant mentioned by Oxler and Larson to verify the contents of the tip, particularly questioning him about the location of the guns.

After presenting the affidavit and supporting testimony to the magistrate, O'Keefe revealed to him the name of Oxler and Larson's informer. Since the judge recognized this informer as a person who had previously supplied reliable information upon which the judge had acted and which proved correct, he relied upon that informant's tip and made no effort to ascertain the credibility of Stewart's informer.

Based upon the officer's written affidavit and his supplementing sworn testimony, the warrant was issued by the magistrate, and executed by police officers who found, in the apartment described in the affidavit and specified in the warrant, the four guns which are the subject of the indictment.

The district court, in sustaining the motion to suppress, reasoned that the Supreme Court had laid down a "2-prong rule" in Aguilar v. Texas, 378 U. S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli, supra,* to wit: the affidavit for the warrant must disclose (1) circumstances justifying the magistrate to conclude the informant was credible, and (2) circumstances supporting the informant's conclusion of the defendants' connection with the criminal

activity. The court found the first prong—the credibility of the informant—had been sufficiently satisfied, and that finding is not challenged here by appellees. But the court found the second prong unsatisfied. In so deciding, the court reasoned:

"The affidavit in the case before this court like that in *Spinelli* does not state any of the underlying circumstances on which the informant concluded that defendants had committed the burglary in which the firearms were taken. There is nothing in this record independent of the informant's conclusions suggesting any criminal activity on the part of defendants. Thus, compliance with the second prong of *Aguilar-Spinelli* is lacking.

It is therefore the view of the court that since the affidavit of Captain O'Keefe fails to state how this informant came by his information connecting the defendants with the burglary it was insufficient to establish probable cause for the issuance of the search warrant and the evidence must be suppressed."

Thus, because *Aguilar's* second prong was not satisfied, the district court granted the suppression order. The government then sought reconsideration of the order, contesting for the first time the standing of defendants to challenge the search and seizure. This issue was rejected by the court and this appeal followed.

## II. STANDING ISSUE

The government's contention that defendants lack standing to contest this search is premised on evidence which tends to show that defendants had no interest, possessory or otherwise, in the apartment where the guns were seized. However, regardless of the merits of the argument espoused by the government,

3. At a suppression hearing in state court relating to this same warrant Captain O'Keefe testified in detail as to the contents of his oral testimony to the magistrate who issued the warrant. The transcript of this testimony was placed in evidence on the motion to suppress here at issue.

we prefer to and do assume *arguendo* that the defendants possessed the requisite standing and go directly to the issue of the validity of the search warrant.

## III.   THE VALIDITY OF THE SEARCH

The essential question presented by defendants' objections to this search is whether there was probable cause for the issuance of the warrant pursuant to which the search was conducted. Since without the informer's tip the officers' information would have consisted solely of knowledge of the occurrence of the burglary and observation of the act of removing a heavy, cardboard box from a car into a vacant apartment, it is clear the reliability of the informer's tip is essential to the validity of the warrant. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). In this case, as in most similar cases, the magistrate could easily have found that the affiant officer accurately repeated the informer's tip and that the tip, if true, furnished probable cause for issuance of a warrant. The focal problem in these cases, then, is whether the magistrate was given sufficient basis for crediting the informer's tip. This is a problem which has received considerable attention from the courts, notably the Supreme Court,[4] to whose opinions we now turn.

### A.

The convenient starting place in discussing Supreme Court caselaw on informers' tips is Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In that case the information the Supreme Court deemed sufficient to

credit the tip was twofold. First, the officers swore to the informer's past reliability in furnishing information. Second, the reliability of the contents of this particular tip was shown by the fact the police independently corroborated every facet of the tip's detailed description of the suspect and his activities except the essential fact that he had heroin in his possession. Then, in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court laid down a standard for testing the credibility of informers' tips which took no cognizance of the *Draper* holding that corroboration of part of the tip infers the remainder is reliable. Instead, the Court held that the magistrate must be told not only "some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable' " but also "some of the underlying circumstances from which the informant" reached the conclusions conveyed in his tip. 378 U.S. at 114, 84 S. Ct. at 1514.

■ The Court soon made clear, however, that the prophylactic rule announced in *Aguilar* did not overrule *Draper sub silentio.* In Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Court expressly reaffirmed *Draper* and enunciated the following alternative test:

"The informer's report must first be measured against *Aguilar's* standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar,* the other allegations which corroborate the information contained in the hearsay report should then be considered. At this

---

4. *See* United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) ; Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) ; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) ; McCray v. Illinois, 386 U.S. 300, 301–305, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) ; Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) ;

Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) ; Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964) ; Jones v. United States, 362 U.S. 257, 267–273, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) ; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) ; Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration? *Aguilar* is relevant at this stage of the inquiry as well because the tests it establishes were designed to implement the long-standing principle that probable cause must be determined by a 'neutral and detached magistrate,' and not by 'the officer engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, 333 U.S. 10, 14 [68 S.Ct. 367, 92 L.Ed. 436] (1948). A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which—even when partially corroborated—is not as reliable as one which passes *Aguilar's* requirements when standing alone.

. . . In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

The detail provided by the informant in Draper v. United States, 358 U.S. 307 [79 S.Ct. 329, 3 L.Ed.2d 327] (1959), provides a suitable benchmark. While Hereford, the Government's informer in that case, did not state the way in which he had obtained his in-formation, he reported that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specified mornings. Moreover, Hereford went on to describe, with minute particularity, the clothes that Draper would be wearing upon his arrival at the Denver station. A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way."

393 U.S.. at 415–417, 89 S.Ct. at 588, 589. *Spinelli* thus stands squarely for the proposition that even if the two-pronged test of *Aguilar* is not met, the information before the magistrate may be sufficient if, as in *Draper*, it is sufficiently detailed, or sufficiently corroborated, to supply as much trustworthiness as does the *Aguilar* test. See Judge (now Mr. Justice) Blackmun's opinion in United States v. Mitchell, 425 F.2d 1353 (8th Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 85, 27 L.Ed.2d 90 (1970).

The Supreme Court caselaw on this subject has its most recent pronouncement in United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). While we think the present case can be decided solely on *Spinelli's* reaffirmation of *Draper*, the *Harris* case merits attention because the Supreme Court majority in that case, while unable to agree to an opinion, was able to agree to a judgment which indicates a measure of disagreement with the result in *Spinelli*. See especially Mr. Justice Blackmun's concurring opinion, 403 U.S. 585, 91 S.Ct. 2075.[5]

In *Harris*, there was no averment of underlying circumstances to support the informer's credibility and thus the first of *Aguilar's* two prongs was not satis-

---

5. A number of the judges composing this court's present majority were, like Mr. Justice Blackmun, members of the *en banc* majority reversed by the Supreme Court in *Spinelli, see* 382 F.2d 871 (8th Cir. 1967), and many of us agree with his statement that "Nothing this [the Supreme] Court said in *Spinelli* convinced me to the contrary." 403 U.S. at 586, 91 S.Ct. at 2083. However, we will of course continue diligently to apply the law as announced in *Spinelli* so long as the Court adheres to it. Indeed, no relaxation of the *Spinelli* standards is needed to approve the present warrant.

fied. Furthermore, unlike *Draper,* none of the tip was corroborated by independent investigation. The corroboration consisted solely of the suspect's past record and reputation and other unspecified tips from undisclosed informants. The Court nevertheless affirmed the validity of the warrant, primarily because, according to the Chief Justice's plurality opinion, the underlying circumstances by which the informer acquired his information were said by the informer to be firsthand observation and activity, and because the credibility of this claim of firsthand knowledge was bolstered both by the fact it constituted an admission against penal interest and because the substance of the claim was corroborated to the extent mentioned above.

■ Thus *Harris,* it seems to us, indicates the inclination of the present Supreme Court to relax the standards by which the credibility of informers' tips are to be judged and to avoid the mechanical application of prophylactic rules such as the *Aguilar* test. Yet, we need not rely in this case upon prognostication of future cases. The alternative test enunciated in *Spinelli* is clearly satisfied here.[6] It does seem to us, however, that in view of the concurring opinions of Mr. Justice White in *Spinelli* and Mr. Justice Blackmun in *Harris,* in view of the marked difference in tone between *Harris* and *Spinelli,* and in view of the split voting pattern in those two cases, the lower federal courts would be well served if the Supreme Court would clarify its views as to warrants and searches premised upon informers' tips.

### B.

■ In applying *Spinelli's* alternative test to the facts of the present case, we first apply the *Aguilar* test—the sufficiency of the showing furnished the magistrate of (1) the underlying circumstances showing the credibility of the informer or the reliability of his information, and (2) the underlying circumstances from which the informer reached the conclusions he conveyed in the tip, which here were his statements that these defendants were the burglars and used the specifically described car in the burglary. Here, of course, as found by the district court, *Aguilar's* first prong is amply satisfied. The magistrate himself recalled that the informer, whose name was revealed to him, had furnished reliable information on which the magistrate had acted in

6. Contrary to the averment in the dissenting opinion, the majority does not decide this case as it has "because it senses 'an inclination of the present Supreme Court to relax the standards by which the credibility of informer tips are to be judged.'" Nor do we think, as the dissent asserts, that our opinion "discards the second prong of the *Aguilar* test" or "suggests that Harris v. United States . . . has destroyed the underpinnings of" *Aguilar's* second prong. As we stated in the text above before the dissent was penned, we do think *Harris* indicates the present Supreme Court's discomfort with *Spinelli's* result, but we need not rely upon that view to decide the case as we have. It was the *Spinelli* opinion itself which authorized substituting the *Draper* test for *Aguilar's* second prong; thus the present majority opinion has faithfully complied with *Spinelli* in relying upon *Draper* instead of *Aguilar.* As the dissenting opinion ultimately reveals, the real difference between the majority and dissenters in this case is not over the law as stated in *Aguilar* and *Spinelli,* but the conclusion one reaches after applying *Draper* to the facts of this case. The dissent says that "*Draper* relaxes [*Aguilar's* second prong] . . . only where the informant describes in sufficient detail future activities which subsequently occur." As demonstrated in Part III B of this opinion, we do not believe *Draper* is limited to the degree of detail of tips of future activity. The question is the reliability of the method by which the informer acquired his information, not his talents as a prognosticator. Thus a combination of detail and corroboration of past and future incriminating conduct will suffice. The only reason it was important in *Draper* that the tip predicted future conduct was because the tip concerned a crime which had not yet occurred. Where, as here, the crime precedes the tip, we think it misreads *Spinelli* and *Draper* to say the tip is accurate only if it predicts additional future conduct by the suspected parties.

the past. However, the second prong of *Aguilar* is not satisfied because Captain O'Keefe revealed nothing to the issuing judge that would indicate the basis of the informer's conclusions. We turn then to the alternative to the *Aguilar* test, *Draper*: whether the informer's tip was sufficiently detailed and corroborated to indicate its probable reliability. We think that test is clearly satisfied here.

First, unlike most other informer tip cases, the officers here were investigating a known crime, not a crime whose existence was evidenced only by the informer's tip. *Compare Harris, Spinelli, McCray, Beck, Aguilar, Jones,* and *Draper, supra* note 4, *with* Rugendorf v. United States, *supra* note 4. Second, the officers observed the three suspects named by the informer driving a car which belonged to someone else and which was identical in year, make, model, color and license number to the car said by the informer to have been used by them in the burglary. Third, the officers observed the three suspects unload from that car a very heavy, five foot long cardboard box, which could well contain some of the stolen guns, and deposit the box in an apartment which was not only vacant but also in a building under the control of the owner of the car. Fourth, as in *Harris* and *Jones, supra,* this informer tip was further corroborated by the fact it was identical to a tip given another officer by another informer, *see* 403 U.S. at 581, 91 S.Ct. 2075; 362 U.S. at 271, 80 S.Ct. 725, and by the fact this informer of known reliability conveyed this tip separately to an FBI agent and a city police lieutenant and repeated it twice under questioning by Captain O'Keefe.

In sum, we think the credibility of the informer, which was proven by the magistrate's personal knowledge of his past reliability, plus the specificity and extent of the corroboration of the information supplied by the informer, were suf-

ficient to support the magistrate's belief the identified informant's information was true. That information being credited, there clearly was probable cause for issuing the warrant and the search was therefore constitutionally valid. The District Court's order suppressing the evidence is therefore vacated and the cause remanded for further proceedings not inconsistent with this opinion.

BRIGHT and ROSS, Circuit Judges (concurring).

Except for the reservation noted below, we join the majority opinion. Taking into account the credibility of the informer, the details furnished by the informer, and the corroboration of some of those details by an FBI agent, we think the affidavit furnished "probable cause" for the issuance of the warrant. Under these circumstances, the magistrate here would know that "he [was] relying on something more substantial than a casual rumor circulating in the underworld. . . ." Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. at 589 (1968). The affidavit need only establish the probability of criminal activity and the secreting of evidence on specific premises; proof beyond a reasonable doubt is not required. United States v. Smith, 462 F.2d 456, 460 (8th Cir. 1972), and cases cited therein.

We do not agree with the majority's view that the *Harris*[1] opinion is in conflict with the *Spinelli*[2] case. Rather, we deem the facts in those cases distinguishable and the opinions reconcilable.

In *Harris*, the plurality opinion of the Chief Justice distinguished the facts from those in *Spinelli* on the ground that the warrant in *Harris* was found valid because the informant's tip "recount[ed] personal and recent observations by an unidentified informant of criminal activity," thus showing that the information had been gained in a reliable manner. These facts served to distinguish the

[1]. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

[2]. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968).

tip in *Harris* from that held insufficient in *Spinelli,* in which the affidavit failed to explain how the informant came by his information, *Spinelli, supra,* 393 U.S. at 416, 89 S.Ct. 584. United States v. Harris, 403 U.S. at 579, 91 S.Ct. 2075. [United States v. Smith, *supra,* 462 F.2d at 460 n. 3.]

LAY and HEANEY, Circuit Judges (dissenting).

We respectfully dissent.

As late as May, 1972, this court in LeDent v. Wolff, 460 F.2d 1001 (8 Cir. 1972), acknowledged that the tests of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969), are "still controlling." The majority of this court today discards the second prong of the *Aguilar* test, i. e., whether the affidavit discloses the underlying circumstances as to how the informant gained his information so as to demonstrate sufficient probability of credibility to allow a search. The majority opinion does so because it senses an "inclination of the present Supreme Court to relax the standards by which the credibility of informers tips are to be judged." We refuse to speculate as to what that court may do in the future preferring to rest our judgment on what it has done to date.

Spinelli v. United States, supra, did not lay down any new rule of law. To "overrule" *Spinelli* might change the result there reached but hardly would alter the viable principles of *Aguilar* which still rationally and logically remain the law. *Spinelli* did very little more than offer explication to the principles of *Aguilar* under a different factual setting.

The majority opinion suggests that United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) has destroyed the underpinnings of the "underlying circumstance" rule of *Aguilar.* We respectfully suggest this misreads *Harris* and its relationship to *Aguilar* and *Spinelli.* The search warrant in *Harris* was attacked on the ground that the *reliability* of the informant was not established. The plurality opinion of Chief Justice Burger upheld the warrant finding (1) that sufficient factual foundation for believing the informant was presented (Justice Stewart concurring) and (2) that since the informant's statement was against his own penal interest, additional basis for crediting the tip was provided. (Justice White concurring.) The Chief Justice, relying upon Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), distinguished *Spinelli* saying:

"The affidavit in the present case, like that in *Jones,* contained a substantial basis for crediting the hearsay. *Both affidavits purport to relate the personal observations of the informant—a factor that clearly distinguishes Spinelli, in which the affidavit failed to explain how the informant came by his information.* Both recite prior events within the affiant's own knowledge . . . indicating that the defendant had previously trafficked in contraband. These prior events again distinguish *Spinelli,* in which no facts were supplied to support the assertion that Spinelli was 'known . . . as a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers.' *Spinelli, supra,* at 422 [89 S.Ct. 584]." (Emphasis ours.) United States v. Harris, *supra,* at 581, 91 S.Ct. at 2081.

The only qualification in *Harris* of *Spinelli* is found in the plurality opinion where four justices discounted the "*dictum*" in *Spinelli* that the defendant's reputation cannot be used in weighing probable cause. 403 U.S. at 582, 91 S. Ct. 2075 (1971).

However, what is germane here is that the *Aguilar* test requiring the disclosure of underlying circumstances which show that the informant has gained his information in a reliable way, still must be applied. The trial court found this information missing. The only circumvention of this rule is found

in the factual setting of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1957). See, e. g., United States v. Mitchell, 425 F.2d 1353 (8 Cir. 1970), cert. denied, 400 U.S. 853, 91 S. Ct. 85, 27 L.Ed.2d 90. However, the clear admonition in *Spinelli* has never been overruled or even doubted. It was there said:

> "A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which—even when partially corroborated—is not as reliable as one which passes *Aguilar's* requirements when standing alone.
>
> ". . . In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Spinelli v. United States, 393 U.S. at 415–416, 89 S.Ct. at 589.

It is this caution which should control our decision here.

The fallacy of the majority's ruling is that it assumes, without discussion, the conclusory charge that the defendants had burglarized the house. The affidavit is without any detail which discloses that these informants had gained this information in a reliable way, and unlike *Draper* it is without any description of the suspects or any projections concerning their future activities. No detailed information is provided that these men (1) placed the guns in a large paste board box or (2) that they would be at Magnuson's apartment with such a box

at the time and at the place where they were later observed and found. There is no nexus made by the informants between the conclusory statement that the men committed the burglary and that they might be located at a certain time and place which might have provided further credence to their original Charge. Cf., Draper v. United States, supra. The fact that the informants stated that the men used a certain car with license plates belonging to Magnuson hardly corroborates the informants' charge that they had committed the offense. This does not differ significantly from the unlisted telephone number rejected in *Spinelli*.[1]

There are undoubtedly some that feel that *Aguilar* and *Spinelli* impose technicalities which unduly restrict effective police enforcement. We are not in this group. *Spinelli* and *Aguilar* impose the simple common sense requirement that the "unidentified reliable informant" reveal how he knows that the accused participated in illegal activities. *Draper* relaxes this requirement only where the informant describes in sufficient detail future activities which subsequently occur. The rationale of *Draper* is that where the affidavit discloses sufficient corroborative factors which demonstrate a guarantee of personal knowledge of the "modus operandi" of the criminal activity, the necessary trustworthiness as to the source of the information, as distinguished from the reliability of the informant, is provided. If we stay with these simple rules we will not impede effective law enforcement. If we chip away at them, we will not only erode the rights of all citizens under the Fourth Amendment but we will, as well, confuse law enforcement officers in the performance of their duties.

---

1. The majority of our court erroneously gave credence to this information, however, we were overruled by the Supreme Court. Mr. Justice Harlan observed:

"Here, the only facts supplied were that Spinelli was using two specified telephones and that these phones were being used in gambling operations. This meager report could easily have been obtained from an offhand remark heard at a neighborhood bar." Spinelli v. United States, 393 U.S. at 417, 89 S.Ct. at 589.