996 F.2d 1217
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Otoniel CAMPOS-GONZALES, Defendant-Appellant.
 No. 92-1837.
 United States Court of Appeals, Sixth Circuit.
 May 27, 1993.
 
 Before JONES and SUHRHEINRICH, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-Appellant Otoniel Campos-Gonzales appeals his conviction following a conditional guilty plea. The sole issue on appeal is whether the district court erred in denying Campos-Gonzales' motion to suppress evidence obtained from his residence pursuant to a search warrant. For the reasons stated herein, we affirm.
 
 I.
 
 2
 On November 17, 1991, agents of the Drug Enforcement Administration (DEA) executed a search warrant at Campos-Gonzales' residence which is located at 15562 Cleveland, Allen Park, Michigan. During the execution of the warrant, the agents found over $100,000 in cash and approximately twenty kilograms of cocaine.
 
 
 3
 The search warrant, issued by a federal magistrate, was based on a search warrant application and an accompanying affidavit provided by Senior Agent Donald Buechner of the United States Border Patrol. At the time, Buechner was assigned to the DEA. In addition to other information, the affidavit contained the following information which is relevant to this case:
 
 
 4
 The DEA had received information from a confidential informant that Salvador Zamora, a drug money courier, was presently in the Detroit, Michigan metropolitan area in order to collect approximately $1,500,000 in U.S. currency as payment for 1500 pounds of marijuana recently shipped to Detroit from Texas. The informant told the agents: 1) the 1500 pounds of marijuana was shipped to the Reyes family in Detroit; 2) the Reyes family resided at 17371 McIntyre, Detroit; 3) Zamora would be staying at 1971 Military, Detroit and a large amount of money from the marijuana sales would be kept at that address; 4) Tony Reyna, who lives at 1975 Military, Detroit, was also involved in the Zamora drug organization; 5) 1971 Military and 1975 Military were part of a duplex; 6) Zamora lives in Texas and only comes to Michigan to collect money from narcotics sales; and 7) Zamora would be travelling to different residences in Michigan in order to collect the money owed from the marijuana sales.
 
 
 5
 Armed with this information, DEA agents began surveillance of 1971 Military on November 6, 1991. Surveillance established that Zamora was at 1971 Military. During the surveillance, agents followed Zamora to various locations in the Detroit area. On some of these occasions, an individual the agents thought was Abelardo Campos-Salinas (later identified as his brother, the Defendant Otoniel Campos-Gonzales) accompanied Zamora in an automobile registered to Campos-Salinas of 15562 Cleveland. Among the locations Zamora went with either Campos-Gonzales or others were 15562 Cleveland, 17371 McIntyre (home of the Reyes family), and 9255 Buckingham, Union Lake, Michigan. Buechner states that these "residences [were] known by DEA or local police to house mid-level marijuana dealers." J.A. at 58. On November 10, 1991, Zamora and an individual thought to be Campos-Salinas drove to 9255 Buckingham, 17371 McIntyre, and 15562 Cleveland. They did not stay at either of the first two residences very long. On November 14, 1991, agents observed three males exit a vehicle with several full, large garbage bags. The males entered 1975 Military. Buechner stated that he "knows that narcotics and/or proceeds are commonly transported in large garbage bags." Id. at 60.
 
 
 6
 On November 14, 1991, the informant told Buechner: 1) that Zamora was preparing to depart to Texas with a large amount of money presently being kept at 1971 Military; 2) that he has personally known Zamora to be a drug trafficker for several years; 3) that "he recently received information from an associate of Compas [sic], that Campos was presently in possession of some marijuana and money at his residence at 15562 Cleveland ...," id.; 4) that Zamora is currently collecting money from the marijuana sales and that he has not collected all the money; and 5) that there is a connecting door between 1971 and 1975 Military inside the duplex.
 
 The affidavit also stated:
 
 7
 On November 17, 1991, [DEA agents] executed search warrants at 1971 and 1975 Military ... and 9255 Buckingham.... Recovered from the Military addresses were narcotic records indicating the sale of hundreds of pounds of marijuana and the collection of over $500,000.00 in cash. More than 20 $5000.00 money wrappers were also found in the house. The records indicated that a [substantial] amount of money and marijuana have not yet been collected or sold. Recovered from the Buckingham address were between 50 and 100 pounds of marijuana and approximately $11,000.00 in cash.
 
 
 8
 Id. The affidavit concluded, "Based upon the foregoing you[r] affiant believes there is probable cause to believe that there exists marijuana, proceeds, paraphernalia, and records at 15562 Cleveland...." Id. at 62.
 
 
 9
 On December 17, 1991, Campos-Gonzales was charged in a one-count indictment with possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988). On March 24, 1992, the district court held an evidentiary hearing pursuant to Campos-Gonzales' motions to suppress physical evidence obtained from his residence and personal statements. Following the court's denial of his motions, Campos-Gonzales entered a conditional guilty plea to the indictment, preserving his right to appeal the suppression issue.
 
 II.
 
 10
 Campos-Gonzales challenges the district court's denial of his motion to suppress evidence obtained from his house pursuant to a search warrant. Campos-Gonzales argues that the warrant is not supported by probable cause.
 
 
 11
 The standard of review for issuance of a search warrant " 'is whether the magistrate had a substantial basis for finding that the affidavit [in support of the warrant] established probable cause to believe that the evidence would be found at the place cited.' " United States v. Davidson, 936 F.2d 856, 859 (6th Cir.1991) (quoting United States v. Loggins, 777 F.2d 336, 338 (6th Cir.1985) (per curiam)). "The courts should not undertake a de novo review of the sufficiency of an affidavit, nor should they 'invalidate [a] warrant by interpreting [an] affidavit in a hypertechnical, rather than commonsense, manner.' " United States v. Pelham, 801 F.2d 875, 877 (6th Cir.1986) (citations omitted), cert. denied, 479 U.S. 1092 (1987). "Rather, the magistrate's probable cause determination should be afforded great deference by the reviewing court." Davidson, 936 F.2d at 859 (citing Pelham, 801 F.2d at 877). Furthermore, " 'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' " Illinois v. Gates, 462 U.S. 213, 237 n. 10 (1983) (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965)).
 
 
 12
 To determine whether a search warrant is supported by probable cause, a magistrate must use a flexible totality-of-the-circumstances standard. Gates, 462 U.S. at 233, 238. Under the totality-of-the-circumstances test, where there is a fair probability that evidence will be found in a particular place, probable cause exists. Id. at 238. Prior to the United States Supreme Court decision in Gates, the Court employed the two-pronged Aquilar-Spinelli test. See Spinelli v. United States, 393 U.S. 410, 415-16 (1969), overruled by Gates, 462 U.S. at 238; Aguilar v. Texas, 378 U.S. 108, 113-14 (1964), overruled by Gates, 462 U.S. at 238. The first prong, the "basis of knowledge" prong, required that the affidavit reveal how the informant came by his or her knowledge. See Spinelli, 393 U.S. at 415-16. The second prong, the "veracity" prong, required that the affidavit in support of the search warrant offer the magistrate a basis to conclude that the affiant's informant is trustworthy or reliable. See id.
 
 
 13
 In Gates, the Court departed from the Aguilar-Spinelli test, substituting a more flexible "totality of the circumstances test." 462 U.S. at 238. Under the Gates test, a weakness in either prong is not fatal to a finding of probable cause, as long as the issuing magistrate had a substantial basis for the finding. Id. Evidence bearing on the veracity of the informant and his or her basis of knowledge is considered together with other relevant evidence in making the probable cause determination based on the totality of the circumstances. Id.
 
 A.
 
 14
 In arguing that the search warrant is not supported by probable cause, Campos-Gonzales first contends that the confidential informant's reliability was not established.
 
 
 15
 A confidential informant's reliability may be established through independent police corroboration of the information provided. See, e.g., Gates, 462 U.S. at 241-43; United States v. Angulo-Lopez, 791 F.2d 1394, 1397 (9th Cir.1986) (detailing ways an informant's veracity or reliability may be established including by having police corroboration of the information provided).
 
 
 16
 In this case, the confidential informant's reliability was established through independent DEA corroboration. For example, the informant told the DEA agent about Zamora being in Detroit, where Zamora would be staying, and what he would be doing. Police surveillance established that Zamora was in Detroit, that he was staying exactly where the informant had indicated, and that he travelled to different residences in Michigan, just as the informant had indicated. In addition, the informant told the DEA on November 14, 1991 that Zamora was preparing to depart to Texas with a large amount of money presently being kept at 1971 Military, and that Zamora had not collected all the money from the marijuana sales. When the DEA agents executed a search warrant of 1971 Military three days later, the agents did find a large amount of cash and records indicating that Zamora had not collected all the money from the marijuana sales.
 
 
 17
 Based on the foregoing, the confidential informant's reliability was established.
 
 B.
 
 18
 Campos-Gonzales next argues that the statement--that Campos was presently in possession of some marijuana and money at his residence at 15562 Cleveland--made by an associate of Campos-Salinas to the confidential informant, who, in turn, told the affiant, constituted unreliable double hearsay. As such, Campos-Gonzales argues that the statement should not have been used to support a finding of probable cause. Furthermore, Campos-Gonzales argues that without the use of the statement, there is insufficient information to support a finding of probable cause.
 
 
 19
 Hearsay reported by informants is not automatically a bar to a finding of probable cause. See, e.g., Angulo-Lopez, 791 F.2d at 1397 ("Hearsay reported by informants is no bar to a finding of probable cause."); United States v. Jenkins, 525 F.2d 819, 823 (6th Cir.1975) ("hearsay upon hearsay may be so considered [in a probable cause determination] by a magistrate"); United States v. McCoy, 478 F.2d 176, 179 (10th Cir.) ("when a magistrate receives an affidavit which concerns hearsay on hearsay, he need not summarily reject this double hearsay information"), cert. denied, 414 U.S. 828 (1973); United States v. Smith, 462 F.2d 456, 459 (8th Cir.1972) ("It is not unusual for an affidavit of a law enforcement officer to contain hearsay information from an informant, which, in turn, is based on other information gathered by that informant. Therefore, when a magistrate receives an affidavit which contains hearsay upon hearsay, he need not categorically reject this double hearsay information.") (citations omitted).
 
 
 20
 Where an informant's report is not based on personal knowledge, but rather on the information of a second individual, the magistrate is "called on to evaluate such information as well as all other information in the affidavit in order to determine whether the informant gathered his information in a reliable way and from reliable sources." McCoy, 478 F.2d at 179. In addition, the reviewing court must determine whether a substantial basis exists for crediting the second individual's information. See United States v. Satterwhite, 980 F.2d 317, 322 (5th Cir.1992). Courts, however, have frowned upon a magistrate's reliance on "a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Spinelli, 393 U.S. at 416.
 
 
 21
 Standing alone, the statement by the associate of Campos could very well be a "casual rumor circulating in the underworld." The affidavit does not explicitly disclose the name of the associate or how that associate knew that marijuana and money were at Campos-Gonzales' residence.
 
 
 22
 When the statement is analyzed under the totality of the circumstances test, as the magistrate did, we find that the statement is sufficiently reliable to be utilized in supporting a finding of probable cause. Three days before the search warrant was executed, the confidential informant told the affiant that Zamora, the money courier, had not finished collecting all of the marijuana and money from marijuana sales. In addition, the informant had previously told the agent that Zamora only comes to Detroit to collect money from marijuana sales. The DEA, through its own surveillance, saw Zamora go to Campos-Gonzales' house a couple of times prior to the date they obtained and executed the search warrant on that house. In addition, they saw Zamora, along with a person whose car was registered to an individual residing in Campos-Gonzales' house, go to several locations known to be drug locations. Furthermore, the DEA, in executing search warrants for 1971 and 1975 Military and 9255 Buckingham, seized records which indicated that a substantial amount of money and marijuana had not yet been collected or sold. Finally, the DEA knew that the Campos-Gonzales residence housed mid-level marijuana dealers. All these facts indicate that Campos-Gonzales probably had uncollected marijuana and money at his house. These facts make an otherwise casual rumor much more reliable. As a result, we find that a substantial basis exists for crediting the associate's information.
 
 C.
 
 23
 Third, Campos-Gonzales argues that there is an insufficient nexus between the place to be searched and the crime of possession of contraband. In making his argument, Campos-Gonzales relies on United States v. Savoca, 761 F.2d 292, 297 (6th Cir.), cert. denied, 474 U.S. 852 (1985) and United States v. Freeman, 685 F.2d 942, 949 (5th Cir.1982). Both cases generally indicate "that facts must exist in the affidavit which establish a nexus between the house to be searched and the evidence sought." Freeman, 685 F.2d at 949.
 
 
 24
 In this case, there are facts in the affidavit which establish a nexus between the house and the evidence. An associate of Campos told the informant, who in turn told the affiant on November 14, 1991, that drugs and money were presently in the Campos-Gonzales residence. DEA surveillance had established that Zamora, a drug money courier who was in Detroit only to collect money from several residences, was seen at least twice at that residence. In addition, records seized from a prior search established that not all of the money had been collected by Zamora at the time this search warrant was obtained and executed.
 
 D.
 
 25
 Campos-Gonzales also alleges that the affiant purposefully put false statements in the affidavit regarding the identity of Abelardo Campos-Salinas. The particular part of the affidavit Campos-Gonzales objects to is where the affiant states "an individual identified as Abelardo Campos" was observed in the company of Zamora driving first to 1975 Military and then back to 15562 Cleveland. J.A. at 60. Campos-Gonzales argues that the affiant should have known that the individual he identified as being with Zamora in a vehicle registered to Abelardo Campos-Salinas was not Abelardo Campos-Salinas and that, in fact, the individual was the Defendant, Otoniel Campos-Gonzales.
 
 
 26
 Campos-Gonzales contends that had the judge issuing the search warrant been fully informed of this incorrect statement, the judge would have found that probable cause did not exist, and would not have issued the search warrant. In making his argument, Campos-Gonzales relies on Franks v. Delaware, 438 U.S. 154, 155-56 (1978). The Supreme Court in Franks held:
 
 
 27
 [w]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.
 
 
 28
 Id.; see also United States v. Campbell, 878 F.2d 170, 171-72 (6th Cir.) (quoting Franks, 438 U.S. at 156), cert. denied, 493 U.S. 894 (1989).
 
 
 29
 In this case, the district court granted a hearing. After the hearing, the district court did not make a specific finding that Campos-Gonzales made a specific showing by a preponderance of the evidence that the statement he refers to was intentionally falsified or was made with a reckless disregard for the truth. The district court did find, however, that probable cause existed to issue the warrant.
 
 
 30
 A district court's findings regarding whether a person submitted an affidavit with an application for a search warrant knowing that it contained false information or was reckless with regard to the truth of the information is reviewed under a clearly erroneous standard. See United States v. Henson, 848 F.2d 1374, 1381 (6th Cir.1988), cert. denied, 488 U.S. 1005 (1989).
 
 
 31
 As to the statement regarding the misidentification of Campos-Gonzales, we find that claim was neither false nor made with a reckless disregard for the truth. The agents had identified the vehicle as registered to Abelardo Campos-Salinas at the 15562 Cleveland address in Allen Park. They had seen an individual come from that particular residence, drive the vehicle, and had observed the vehicle return with the individual and remain there overnight.
 
 
 32
 The above does not demonstrate a deliberate or reckless falsehood in the preparation of the affidavit. We find, given the surrounding circumstances, that it was reasonable for the affiant to believe that the individual was the Abelardo Campos-Salinas identified by the informant as living in Allen Park. A fortiori, we find that the district court's holding that the warrant was supported by probable cause was not clearly erroneous.
 
 III.
 
 33
 For the foregoing reasons, the district court's denial of Campos-Gonzales' suppression motion is affirmed.