**UNITED STATES of America,**
**Appellee,**

v.

**Michael Leo FIORELLA et al.,**
**Appellants.**

**Nos. 131, 132, Dockets 72–1459, 72–1460.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 20, 1972.

Decided Oct. 13, 1972.

Herald Price Fahringer, Jr., Buffalo, N. Y. (Lawrence A. Schulz, Buffalo, N. Y., of counsel), for appellant Michael Leo Fiorella.

Norman A. Palmiere, Rochester, N. Y., for appellants A. Richard Fiorella, Clifford Carll, John Porcello, Anthony Pizzutelli, Angelo Alfano, Alfred Rivoli and James Comunale.

Dennis P. O'Keefe, U. S. Dept. of Justice, Washington, D. C. (John T. Elfvin, U. S. Atty. for the Western District of New York, of counsel), for appellee.

Before SMITH, KAUFMAN and MANSFIELD, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Michael Leo Fiorella, A. Richard Fiorella, Clifford Carll, John Porcello, Anthony Pizzutelli, Angelo Alfano, Alfred Rivoli, and James Comunale were convicted after a six-day jury trial in the Western District of New York, Harold P. Burke, Judge, of conspiracy to violate 18 U.S.C. § 1955, which makes it a federal crime to conduct certain types of gambling businesses.[1] All were acquitted on the substantive charge of violating § 1955. They appeal from the conspiracy conviction on grounds of insufficiency of evidence, inconsistency of verdict, illegality of wiretaps and prejudicial summation. We find no error and affirm the convictions.

This case arose out of an FBI investigation of gambling in Rochester. Responding to tips by two confidential informants, the FBI conducted physical surveillance of 84 Cleveland Street in Rochester, the suspected gambling headquarters. Relying on the fruits of that surveillance and on the two tips, the government on March 4, 1971 obtained an order, pursuant to 18 U.S.C. § 2518, from Judge Burke authorizing a wiretap on a phone at the suspected headquarters. That tap ran for twelve days and produced twenty-eight reels of evidence, much of which disclosed the appellants accepting wagers and giving out betting information. These tapes provided the bulk of the government's case at trial.

Appellants' first contention is that their acquittal on the substantive charge is inconsistent with the conspiracy conviction, and thus compels reversal of the latter. That claim is obviously without merit. For one thing, appellants argued quite strenuously at trial that, whatever the evidence established, it did not show that the gambling busi-

---

1. The statute outlaws a gambling business which:

"(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day."

18 U.S.C. § 1955(b) (1).

468 F.2d—44

ness took in over $2000 daily, so that 18 U.S.C. § 1955 was not violated. A jury accepting that argument but finding, as it well could here, that an illegal gambling business was being conducted by these defendants, would be justified in acquitting on the substantive charge but convicting for conspiracy.[2] Moreover, even assuming *arguendo* that the acquittal on the substantive count is at odds with the conspiracy verdict, inconsistency has long been held to be one of the jury's prerogatives. Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1931); United States v. Dotterweich, 320 U.S. 277, 279, 64 S.Ct. 134, 88 L.Ed. 48 (1943); United States v. Collins, 272 F.2d 650, 653 (2d Cir. 1959).

■ Appellants next mount a broad attack against the wiretap. First, they contend that the wiretap application was improperly authorized. The application for a wiretap order was made in an affidavit dated March 3, 1971, by the United States Attorney for the Western District of New York. As Exhibit A to that application, the government attached a letter from the Department of Justice, authorizing the application to a federal judge for a wiretap, and reciting that it has been determined that probable cause exists in this case. This communication was apparently another of the now-familiar "Will Wilson letters,"

purportedly signed by the then-Assistant Attorney General, but in reality signed by members of his staff.[3]

Appellants claim that this authorization did not comply with 18 U.S.C. § 2516, which requires the Attorney General "or any Assistant Attorney General specially designated by the Attorney General," to authorize application for wiretap orders. In response to pretrial motions based on that contention, the government produced an affidavit from Sol Lindenbaum, the executive assistant to the Attorney General, which asserted that the Attorney General had personally approved a request for authorization to make the wiretap application in this case. Attached to the affidavit was a memorandum from Attorney General John N. Mitchell to Wilson, dated March 1, 1971, stating:

> "Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to exercise those powers for the purpose of authorizing H. Kenneth Schroeder, Jr. to make the above-described application."

That memorandum contains what Lindenbaum identifies as the signed initials of Attorney General Mitchell.

The authorization here is thus precisely the same as those upheld by this court

2. Appellants' claims that there is insufficient evidence to support a conspiracy conviction are unfounded. As to all defendants but Clifford Carll and Michael Fiorella, the evidence is overwhelming. As to those two, the case is less ample, but sufficient. While Carll personally participates in only one intercepted telephone call, that instance shows him placing a bet for someone else. On several other occasions other speakers clearly link him to the gambling business; physical surveillance placing him frequently at 84 Cleveland Street and the seizure of a betting slip in his pocket upon arrest further support his conviction. As to Michael Fiorella, he is found speaking on at least three of the telephone calls, and was identified as a gambling entrepreneur by a number of customers who testified at

trial. *Cf.* United States v. Pardo-Bolland, 348 F.2d 316, 325 (2d Cir.), cert. denied, 382 U.S. 944, 86 S.Ct. 388, 15 L. Ed.2d 353 and Bruchon v. United States, 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed. 2d 354 (1965) (once conspiracy is proved, only slight evidence needed to connect each conspirator with it).

3. While the government never admitted that the letters were not signed by Wilson, Judge Burke assumed that in deciding the motion to suppress. Since the government chose to answer the defendants' allegations by showing that Attorney General John N. Mitchell authorized the application, there seems to be at least a tacit confession that questions over the authenticity of Wilson's signature were correct.

in United States v. Pisacano, 459 F.2d 259 (2d Cir. 1972), and United States v. Becker, 461 F.2d 230 (2d Cir. 1972). In light of those decisions, appellants' contention of improper authorization must fail.[4] We do note, as we did in *Becker, supra,* 461 F.2d at 236, that our decision is not to be construed as approval of the Justice Department's procedures, and that we hope future authorizations will adhere more strictly to the letter of §§ 2516 and 2518.

■ Appellants next contend that since the wiretap order in this case authorized the interception of "communications of Michael Fiorella, John Porcello, Clifford Carll, Anthony Pizzutelli, Richard Grock, Alfred Rivoli, and *others yet unknown,*" (emphasis added) it constitutes a general warrant. The statute, 18 U.S.C. § 2518(4)(a), however, only requires that the order specify "the identity of the person, if known, whose communications are to be intercepted." That requirement has been upheld a number of times against precisely the attack mounted here. *See, e. g.,* United States v. King, 335 F.Supp. 523, 538–540 (S.D.Cal.1971); United States v. Perillo, 333 F.Supp. 914, 921 (D.Del.1971); United States v. Sklaroff, 323 F.Supp. 296, 324–325 (S.D.Fla.1971). *Cf.* United States v. Cox, 449 F.2d 679 (10th Cir. 1971), cert. denied, 406 U.S. 934, 92 S. Ct. 1783, 32 L.Ed.2d 136 (1972). We agree. The Fourth Amendment requires a warrant to describe only "the place to be searched, and the persons or things to be seized", not the persons from whom things will be seized. The inclusion of the "others yet unknown" phrase did not invalidate the tap here.

■ Appellants' final attack on the wiretap is that it is unsupported by sufficient *probable cause.* The affidavit supporting the wiretap application in this case was made by Johnny L. Evans, an FBI special agent. In it, he recites

the information supplied by the two confidential informants, who he says have both provided information that has in the past proved reliable, and in the case of the first informant, led to two convictions. Evans, however, did not personally receive the information from the informants. Rather, each informant conversed with a separate FBI agent, and these two agents passed the information on to Evans. Appellants contend that such use of "double hearsay" cannot supply probable cause.

■ However, the mere fact that an affidavit contains "double hearsay" does not automatically make it insufficient to supply probable cause. United States v. Smith, 462 F.2d 456 (8th Cir. 1972); United States v. Becker, 334 F.Supp. 546, 549–550 (S.D.N.Y.1971), aff'd, 461 F.2d 230 (2d Cir. 1972); United States v. Carney, 328 F.Supp. 948 (D.Del.1971); United States ex rel. Crawley v. Rundle, 312 F.Supp. 15 (E.D.Pa.1969). Rather, the question is whether the information given by the informant, taken in the light of the totality of circumstances, can reasonably be said to be reliable. United States v. Smith, supra, 462 F.2d at 460; United States v. Becker, *supra,* 334 F.Supp. at 550 and n. 14. Here the underlying circumstances give substantial assurances as to the reliability of the information. Not only were the informants ones whose past reliability had been demonstrated and whose opportunity to obtain the information was clearly set forth, but there was also at least some independent corroboration of the tips. The physical surveillance revealed a number of the defendants in the area of the suspected gambling headquarters, and the informants correctly identified the telephone number at 84 Cleveland Street, significant in view of the fact that the telephone was apparently registered to a fictitious name. Given all these circumstances, and the fact that the middle man in the hearsay chain was a named FBI

---

4. *Becker* also forecloses appellants' arguments that Congress acted outside the bounds of the Commerce Clause in enacting § 1955. 461 F.2d at 233–234.

agent, not another informant,[5] the affidavit provides probable cause for the wiretap order.

We do note, however, that the use of "double hearsay" in cases like this is not to be encouraged. Where an informant speaks to an agent, it is that agent who should normally relay the information to the magistrate evaluating the search warrant application. Informants' tips relayed through two agents and then to the magistrate, however accurately reported, unnecessarily reduce the magistrate's ability to make an independent determination of the information's reliability.

Appellants' last contention is that several remarks in the government's summation constituted prejudicial error. Apparently in response to defendants' contentions that they were mere "clerks" in a penny-ante operation, the prosecutor told the jury that the government had not indicted employees, but rather "the managers" and "board of directors" of the gambling operation. He went on to note that this particular operation took in $65,000 in the twelve days of the tap over only one telephone, and if that figure were multiplied by the three telephones at 84 Cleveland Street and extrapolated over one year's time, it would total $5,475,000.

Even assuming *arguendo* that these statements constituted error, any possible prejudice was cured by Judge Burke. In response to an objection about the mathematical calculations, Judge Burke interrupted the summation to caution the jury that this was only argument, and that no one in the evidence had said anything about such a figure. In his charge, the judge described this calculation as "pure speculation" and not based on the evidence in the case. Similarly, his charge told the jury that there was

no evidence of any board of directors, and that they were to "discount" the statement to that effect as argument, and not an established fact.

Appellants' contentions are without merit. The convictions are affirmed.

---

5. *Compare* United States v. Smith, *supra,* where the affidavit in question recited that a reliable informant had been told by a second individual that Smith was involved in narcotics selling. Despite the fact that the "double hearsay" there involved an anonymous second party in addition to the confidential informant, the Eighth Circuit found probable cause under the totality of circumstances.