Rockingham
No. 6235

STATE OF NEW HAMPSHIRE v. JAMES T. LEE

June 29, 1973

*Warren B. Rudman*, attorney general, *Thomas D. Rath*, attorney, and *David W. Hess*, assistant attorney general (*Mr. Rath* and *Mr. Hess* orally), for the State.

*Devine, Millimet, McDonough, Stahl & Branch* and *David Woodbury* (*Mr. Woodbury* orally), for the defendant.

LAMPRON, J. Motion to suppress evidence, marijuana, obtained by the police from a suitcase taken from the trunk of defendant's automobile on July 27, 1970, near the Hampton toll booth of the New Hampshire turnpike. The seizure was incident to a warrantless arrest for drug law violations. RSA ch. 318-B (Supp. 1972). The motion was denied after hearing by *Morris, J.* who reserved and transferred defendant's exceptions in advance of trial.

The issues presented for decision are (1) the legality of the wiretap order on defendant's telephone obtained under RSA ch. 570-A (Supp. 1972) and the propriety of the use was made of the information intercepted, and (2) the existence of probable cause for defendant's arrest and for the search and seizure incident thereto of his automobile and of a suitcase containing the marijuana sought to be suppressed as evidence at the trial.

The relevant facts are not disputed. On July 10, 1970, the State applied to the Superior Court (*Grant,* J.) for authorization to place a wiretap on defendant's home phone. RSA 570-A:9 (Supp. 1972). In the course of the *ex parte* hearing on the application, Captain O'Leary of the State police testified to incriminating facts uncovered in a preliminary investigation of defendant and stressed the need for a tap to identify "Lee's source of marijuana and the identity of those to whom Lee distributes". On the basis of this testimony and an accompanying affidavit detailing certain suspect occurrences involving the

defendant, the judge granted permission to "intercept telephone communications of James T. Lee on telephone number 436-0115 located at 966 Islington Street, Portsmouth, New Hampshire, during the period July 17, 1970 through July 26, 1970, inclusive". *See* RSA 570-A:9 IV, V (Supp. 1972).

As a result of the monitoring of defendant's telephone conversations, the police intercepted a telephone call at about 9 p.m. on July 26, 1970, from which they learned of Lee's intent to drive to Boston to get "the biggest piece I can have." Under instructions from Captain O'Leary, who was in charge, officers positioned themselves near the Hampton toll booth, stopped defendant's automobile on his return trip from Boston, placed him under arrest, and conducted the search and seizure which disclosed the marijuana.

The fourth amendment to the Federal Constitution prohibits the interception of any communication uttered with a reasonable expectation of privacy. *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967); *see* ABA Standards Relating to Electronic Surveillance 14 (Approved Draft 1971). There is no doubt that electronic surveillance of telephone conversations poses a serious threat to an individual's right of privacy. *Berger v. New York,* 388 U.S. 41, 53, 18 L. Ed. 2d 1040, 1049, 87 S. Ct. 1873, 1880 (1967); *United States v. United States Dist. Ct.,* 407 U.S. 297, 312, 32 L. Ed. 2d 752, 763, 92 S. Ct. 2125, 2134 (1972); *see* Annot., 20 L. Ed. 2d 1718, 1722 (1969).

On the other hand, illegal activities in such areas as gambling, loan sharking, and traffic in drugs and narcotics have become so well organized and efficiently carried on that they thwart the traditional police methods of detection. ABA Standards Relating to Electronic Surveillance 31-37 (Approved Draft 1971); *see* RSA 570-A:1 XI (Supp. 1972). In order to maintain a proper balance between the duty of the State to protect the public and the individual's right of privacy and free expression. *(see State v. Bisaccia,* 58 N.J. 586, 590-91, 279 A.2d 675, 677 (1971)), our legislature, like many others, has enacted

a comprehensive "Wiretapping and Eavesdropping" statute to carefully regulate the use of these devices for law enforcement purposes. RSA 570-A:1-11 (Supp. 1972). This statute is similar in most respects to the wiretapping and electronic surveillance requirements of the Federal Crime Control Act of 1968. 18 U.S.C.A. §§ 2510-20.

RSA 570-A:9 as does 18 U.S.C.A. § 2518, delineates in minute detail the requisites of an application for interceptions, the determinations to be made by the judge to whom it is directed, and the requirements of the court order to be issued. Compliance with these specifics is essential to a lawful wiretap order. *United States v. Giordano,* 469 F.2d 522 (4th Cir. 1972); *see Johnson v. State,* 226 Ga. 805, 177 S.E.2d 699 (1970). The averments in the application and the testimony presented in support must warrant a finding by the issuing judge that probable cause exists to grant the wiretap order. *United States v. Fiorella,* 468 F.2d 688 (2d Cir. 1972); *United States v. Leta,* 332 F. Supp. 1357 (M.D. Pa. 1971); *United States v. Cantor,* 328 F. Supp. 561 (E.D. Pa. 1971).

Defendant contends that the requirements of RSA 570-A:9 were not met by the State because the applicant represented that the wiretap was necessary to gain information on Lee's associates while the real purpose was to obtain information on which to arrest Lee himself. He argues that the police already possessed information on which to arrest him and did not need a telephone interception to establish probable cause for that purpose. This contention miscontrues and unduly limits the stated purposes of the police which were to determine not only who purchased marijuana from Lee but also from whom Lee obtained his supplies. These were proper objects for a wiretap and the fact that the monitoring of the calls resulted in the acquisition of evidence of purchases made by Lee does not render the tap illegal. *United States v. Fiorella,* 468 F.2d 688 (2d. Cir. 1972); *see United States v. Poeta,* 455 F.2d 117 (2d Cir. 1972).

The application for the wiretap specified the party and offenses being investigated; recited the facts and circumstances relied upon by the applicant; designated the par-

ticular telephone and types of conversations to be intercepted; explained why alternative investigatory methods had been frustrated; and noted that there had been no previous wiretap. The order of the court permitted interceptions during the limited period of July 17 to July 26, 1970, and the call in question took place within that period. We find no omissions or errors in the proceedings which would render them or the order improper. The allegations in the application and the supporting testimony established probable cause for the issuance of the order to intercept defendant's telephone conversations. *United States v. Fiorella,* 468 F.2d 688 (2d Cir. 1972); *United States v. Poeta,* 455 F.2d 117, 121-22 (2d Cir. 1972); *People v. Gnozzo,* 31 N.Y.2d 134, 286 N.E.2d 706 (1972); *United States v. Askins,* 351 F. Supp. 408 (D. Md. 1972); *United States v. Fox,* 349 F. Supp. 1258 (D. Ill. 1972); *United States v. Leta,* 332 F. Supp. 1357 (M.D. Pa. 1971).

Since the wiretap order was proper, disclosures obtained thereunder could be used by the police in the performance of their official duties. RSA 570-A:8; *see* 18 U.S.C.A. § 2517; George, Constitutional Limitations on Evidence in Criminal Cases 179 (1969); ABA Standards Relating to Electronic Surveillance § 5.16 (Approved Draft 1971). Accordingly the intercepted information that Lee was going to Boston to obtain a large amount of drugs was properly used by the officers involved in this investigation to meet the probable cause requirements for apprehending the defendant at the Hampton toll booth.

In addition to the telephone message which revealed the impending trip and its purpose, the police possessed the following information: Lee had been identified as a dealer in drugs by a police informer who had made a purchase on April 27, 1970, and on prior occasions; a garbage can search outside his residence on May 18, 1970, turned up wrapping paper of the type used for distributable quantities of marijuana with traces of a substance identified in laboratory analysis as marijuana; many drug users were seen frequenting his residence and phone calls intercepted revealed Lee had contacts with other known traf-

fickers. We hold that all these facts and circumstances viewed as parts of a pattern constituted probable cause or reasonable grounds for the police to believe that Lee was trafficking in illegal drugs and that he was committing a crime at the time of his arrest. *State v. Hutton*, 108 N.H. 279, 287, 235 A.2d 117, 122 (1967); *Commonwealth v. Pellier*, 289 N.E.2d 892, 895 (Mass. 1972); *Commonwealth v. Kenney*, 449 Pa. 562, 297 A.2d 794 (1972). The officers could properly arrest him without a warrant. RSA 594:10 (b) (2); ALI Model Code of Pre-Arraignment Procedure, art. 120.1 (Proposed Official Draft No. 1, 1972).

At the time of Lee's arrest at the toll booth, the officers had reasonable cause to believe that his car contained illegal drugs. Under the circumstances the officers could constitutionally make a warrantless search of his automobile and a seizure of the marijuana contained in a suitcase found in its trunk. *State v. McComb*, 111 N.H. 312, 314, 282 A.2d 673, 675 (1971); *Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); *United States v. Mehciz*, 437 F.2d 145 (9th Cir. 1971); *see Commonwealth v. Kane*, 290 N.E.2d 164, 167 (Mass. 1972).

*Exceptions overruled.*

All concurred.