Belknap
No. 92-065

RAINER RALL AND PASQUALE F. ALOSA

v.

TOWN OF BELMONT & a.

December 30, 1993

*Tardif, Shapiro & Cassidy*, of Concord (*R. Peter Shapiro* on the brief and orally), for the plaintiffs.

*Barto and Puffer, P.A.*, of Concord (*Mark H. Puffer* on the brief and orally), for the defendants.

HORTON, J. The plaintiffs, Rainer Rall and Pasquale F. Alosa, appeal a decision by the Superior Court (*O'Neil*, J.) affirming the

Belmont Planning Board's (planning board) denial of their application for a fifteen-lot cluster subdivision. The superior court found that the proposed plan exceeded density restrictions of the zoning districts in which the subdivision was to be built. In addition, the superior court found that the plan violated a wetlands ordinance proposed after the plaintiffs submitted their subdivision plan. We affirm.

Plaintiff Rainer Rall owned a 46.23-acre parcel of land in Belmont. In October 1988, Rall began proceedings before the planning board to subdivide that land into three lots consisting of 29.34 acres, 16.89 acres, and 5.45 acres. Plaintiff Pasquale F. Alosa held an interest in the 29.34-acre lot by virtue of a purchase and sale agreement, and in November 1988, Rall submitted a proposal to the planning board for further subdivision of this lot into a fifteen-lot cluster subdivision. Rall received approval for the three-lot subdivision in April 1990, and in June 1990, Alosa took title to the 29.34-acre lot. In September 1990, the planning board denied Alosa's application for a fifteen-lot cluster subdivision due to noncompliance with the zoning ordinance density requirements and because the proposal failed to reflect proper setbacks under a wetlands conservation ordinance adopted at town meeting in March 1990. The plaintiffs appealed to the superior court, requesting a decree approving the subdivision proposal. The superior court agreed with the planning board and denied relief.

The plaintiffs contend that the planning board erred in applying the wetlands conservation ordinance to their plan because they had no notice of the zoning change until after their subdivision application was pending before the planning board.

The common law rule is that a subdivision application must meet all land use regulations in effect at the time the application is reviewed by the planning board. *See Town of Nottingham v. Bonser*, 131 N.H. 120, 134–35, 552 A.2d 58, 66 (1988). The common law rule gives way, however, where a statute specifically provides "grandfather" protection from recently adopted land use regulations. The thrust of the plaintiffs' argument is that former RSA 676:12 (1986 & Supp. 1989) (amended 1991) provides such protection. We agree with the plaintiffs that former RSA 676:12 extends grandfather protection to subdivision applicants from certain proposed and adopted land use regulations, but hold that the statute *as it read at the time of the events of this case* only provided protection from subdivision and site plan review regulations, and not from zoning ordinances. Because the wetlands ordinance at issue is a zoning ordinance, former RSA 676:12 offers no grandfather protection in this case and

therefore the planning board properly required that the plaintiffs' subdivision application meet its terms.

■ A preliminary issue in our analysis is whether former RSA 676:12 even applies to subdivision applications. We note that former RSA 676:12 is entitled *"Building Permits* to be Withheld in Certain Cases" (emphasis added) and is primarily concerned with the effect of proposed land use regulations on building permit applications. The only language which may reasonably be read to cover subdivision applications appears in the second sentence of former RSA 676:12, V (Supp. 1989): "No proposed subdivision or site plan review regulation or amendment thereto shall affect a plat or application formally accepted by the planning board pursuant to RSA 676:4, I(b) so long as said plat or application was accepted prior to the first legal notice of said change or amendment." While a reading of the statute as a whole permits more than one reasonable interpretation, we find that the intent of the legislature, as expressed in the quoted language of paragraph V, was to affect subdivision application proceedings. *See* Laws 1991, 331:4; P. LOUGHLIN, 1 NEW HAMPSHIRE MUNICIPAL PRACTICE SERIES, LAND USE PLANNING AND ZONING § 3:50 (1992).

The superior court, though, held former RSA 676:12, V inapplicable to the present case, reasoning that the statute addresses proposed, not adopted, land use regulation changes. The court implicitly assumed that the statute applied to all types of land use regulations — including zoning ordinances — but held that because the wetlands conservation ordinance was actually adopted in March 1990, prior to the contested planning board action, the application of the ordinance to the subdivision proposal was governed by RSA 674:39 (1986 & Supp. 1989) (amended 1991) (exempting accepted and recorded plats from changes in subdivision regulations or zoning ordinances for four years). Because the plaintiffs' proposal had been neither approved nor recorded prior to the enactment of the wetlands ordinance, the superior court ruled that it was not entitled to the RSA 674:39 exemption.

■ The superior court read former RSA 676:12, V too narrowly. Although the statute refers specifically to certain "proposed" land use regulation changes, its restrictions may reasonably be interpreted as applying not only while a proposed change is deliberated, but also after that change is adopted. Moreover, in interpreting former RSA 676:12, V, we must be mindful of the "evil or mischief" the statute was designed to remedy. *Appeal of Coastal Materials Corp.,*

130 N.H. 98, 103, 534 A.2d 398, 400 (1987). The legislative history of RSA 676:12, V reveals that the statute was intended to prevent municipalities from "retroactively amend[ing] local land use regulations . . . for the purpose of stopping proposed projects or developments while an application is under consideration." Laws 1991, 331:4 (noting that 1991 amendment is consistent with original statutory intent behind paragraph V); *cf. Blue Mountain Forest Ass'n v. Town of Croydon*, 119 N.H. 202, 205, 400 A.2d 55, 57 (1979) (amendment clarifying former statute is strong evidence of legislature's original intent). The statute thus protects a developer's reasonable expectation that certain land use regulations in effect when a subdivision application is formally accepted will remain in effect for the pendency of the application process. We therefore hold that under former RSA 676:12, V, certain land use regulations, even though subsequently enacted, shall not be material to the approval of a plat or application that has been accepted for review prior to notice of the change.

Having held that former RSA 676:12, V extends grandfather protection to subdivision applicants from certain proposed and actual land use regulations, we turn now to the question of *which types* of land use regulations were covered by the statute in effect at the time of the events of this case. In that effort, we look to the plain and ordinary meaning of the statute. *King v. Sununu*, 126 N.H. 302, 306, 490 A.2d 796, 800 (1985). For purposes of inspection, we again set forth the pertinent provision of former RSA 676:12, V:

> "No proposed *subdivision or site plan review regulation* or amendment thereto shall affect a plat or application formally accepted by the planning board . . . so long as said plat or application was accepted prior to the first legal notice of said change."

(Emphasis added.) We find that the language of the statute is clear in providing grandfather protection only from subdivision regulations and site plan review regulations, and not from other forms of land use regulations including zoning ordinances.

Our interpretation that former RSA 676:12, V did not reach zoning ordinances is further buttressed by examination of the rest of former RSA 676:12, as well as subsequent amendments to paragraph V. First, unlike paragraph V, we note that paragraph I (1986 & Supp. 1990), which covers building permit applications, specifically provides grandfather protection from zoning ordinance changes. Similarly, the legislature amended paragraph V in 1991 — *after* the events in this case — to specifically include grandfather protection from zoning ordinance changes. Both of these examples point to the

legislature's awareness of the various types of land use regulations and its conscious choice, embodied in former RSA 676:12, V, not to reach zoning regulations.

■ Finally, we find that the wetlands ordinance in question is a zoning ordinance, not a subdivision regulation or site plan review regulation, and accordingly hold that the protection of former RSA 676:12, V is not triggered. For purposes of this appeal, we need not look beyond one of the most basic distinctions between zoning ordinances and subdivision or site plan review regulations: in Belmont, the former can be adopted only by an affirmative vote by ballot of a majority of the legal voters present and voting on the day of the town meeting; the latter can only be adopted by a vote of the planning board. RSA 675:1, :3, :6 (1986 & Supp. 1992); 1 LOUGHLIN, *supra* §§ 1:31, 1:32, 3:56. Because the wetlands ordinance in question was adopted not by a vote of the planning board, but instead by a vote at town meeting, it cannot be considered either a subdivision regulation or a site plan review regulation. In sum, the wetlands ordinance is a zoning ordinance, and therefore former RSA 676:12, V affords the plaintiffs no protection. Accordingly, we affirm the trial court's ruling, even though we disagree with its analysis. *In re Trailer and Plumbing Supplies*, 133 N.H. 432, 438, 578 A.2d 343, 346 (1990).

Since the trial court denied the plaintiffs' request for subdivision approval on alternate grounds, either of which would support the action of denial, we do not reach the alternative ground of noncompliance with density requirements. Further subdivision applications will be governed by the density requirements in effect, or noticed, at the time of subsequent applications.

We affirm the decision of the superior court denying the plaintiffs' requested relief.

*Affirmed.*

THAYER, J., did not sit; the others concurred.