Strafford
No. 93-622

THE STATE OF NEW HAMPSHIRE

v.

CHRISTIAN TELLES

January 25, 1995

*Jeffrey R. Howard*, attorney general (*Joseph N. Laplante*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

PER CURIAM. A jury in Superior Court (*Fitzgerald*, J.) found the defendant, Christian Telles, guilty of aggravated felonious sexual assault, RSA 632-A:2, X (1986) (current version at RSA 632-A:2(k) (Supp. 1993)). The sole issue on appeal is whether a witness may testify about the contents of a phone conversation overheard as a result of the witness's eavesdropping on an extension telephone. We affirm.

In 1989, the defendant and his wife became the foster parents of the victim, who was then fourteen. In January 1991, while living in the defendant's home, the victim became pregnant. While the victim was still in foster care, Wendy Vachon Carter, an old friend of the victim's biological mother, invited the victim to spend a few days at her home. The victim accepted the invitation and arrived at Carter's home on February 20, 1991.

During the victim's visit, Carter used an extension telephone to eavesdrop on two telephone conversations between the victim and the

defendant. The second conversation revolved around the question of whether the victim had stopped menstruating. Carter notified the Windham and Rollinsford Police that the defendant had been engaging in sexual intercourse with his minor foster child. The defendant was charged with one count of aggravated felonious sexual assault in violation of RSA 632-A:2, X (1986).

At the defendant's trial, the State called Carter as a witness and asked her about the substance of the telephone conversations that she had overheard. The defendant objected, citing RSA 570-A:6, which prohibits the admission of evidence derived from illegal eavesdropping. RSA 570-A:6 (1986). The trial court excused the jury and conducted a *voir dire* of Carter. During this *voir dire*, Carter testified to the following.

Less than half an hour after her arrival at the Carter residence, the victim began an attempt to reach the defendant by telephone. For two hours, the victim repeatedly dialed the defendant's number, quickly hanging up whenever the defendant's wife would answer. Because these calls were long-distance, the victim used the defendant's calling card number, which he had given her. All this disquieted Carter, who began to worry about the nature of the relationship between the victim and the defendant.

The following afternoon at 1:00 p.m., the victim again telephoned the defendant, and they finally spoke. Carter surreptitiously removed the mouthpiece of an extension telephone in her hallway and listened. Carter heard the victim ask the defendant where he had been the previous night and the defendant tell the victim that he would call her back in an hour. The conversation abruptly ended.

Still suspicious, Carter positioned herself by the hallway telephone at 2:00 p.m. and awaited the defendant's call. The phone rang and the victim answered. Carter picked up her extension, the mouthpiece still removed, and listened to an intimate discussion between the victim and defendant. During this conversation, the victim and the defendant discussed the possibility that the victim was pregnant. The defendant told the victim that if she was pregnant, they would choose a name for the child. The victim told the defendant that she loved him, missed him, and wanted to spend time with him when she returned to his home.

Having completed the *voir dire*, the trial court concluded that Carter's use of an extension telephone regularly utilized in her home fell outside the prohibitions of RSA chapter 570-A. Thus the court allowed Carter to testify, and the jury returned a guilty verdict.

On appeal, the defendant argues that Carter illegally intercepted the defendant's telephone conversation, and that the trial court therefore violated RSA 570-A:6 when it admitted Carter's testimony. The State

argues that Carter's eavesdropping did not fall within the statute's prohibitions. `

The parties disagree as to which version of RSA chapter 570-A controls this case. The defendant argues that the federal statute forbidding the interception and disclosure of wire communications, 18 U.S.C.A. §§ 2510–2520 (1970 & Supp. 1994) (hereinafter Title III), preempts the New Hampshire Legislature's power to adopt less stringent restrictions in that area. Thus, the defendant contends that the federal legislation rendered invalid RSA chapter 570-A (1986), the State statute in effect at the time that Carter eavesdropped on the defendant's conversations. He concludes that the current version, RSA chapter 570-A (1986 & Supp. 1993), therefore controls this case. The State disagrees. We need not resolve this conflict, however, because we find that Carter's conduct was legal even under the more stringent requirements of RSA chapter 570-A (1986 & Supp. 1993).

■ "[T]his court is the final arbiter of the intent of the legislature as expressed in the words of the statute." *State v. Johnson*, 134 N.H. 570, 575, 595 A.2d 498, 502 (1991) (quotation and citation omitted). We begin our analysis with an examination of the statute's language. *Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 277, 608 A.2d 840, 845 (1992). Where possible, we ascribe to statutory words and phrases their ordinary meaning, *id.; see* RSA 21:2 (1988), and look elsewhere only when the plain statutory language permits more than one reasonable interpretation. *See Rall v. Town of Belmont*, 138 N.H. 172, 174–75, 635 A.2d 1368, 1369–70 (1993).

■ RSA chapter 570-A defines "intercept" as "the aural or other acquisition of, or the recording of, the contents of the wire or oral communication through the use of any electronic, mechanical, or other device." RSA 570-A:1, III (Supp. 1993). The statute exempts from the definition of electronic, mechanical, or other device

> [a]ny telephone . . . or any component thereof . . . [f]urnished to the subscriber or user by a communication carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business . . . .

RSA 570-A:1, IV(a)(1) (Supp. 1993). Whether this provision creates an exception for domestic eavesdropping is a question of first impression for this court. RSA chapter 570-A resembles Title III, the federal law forbidding the interception and disclosure of wire communications, *State v. Lee*, 113 N.H. 313, 316, 307 A.2d 827, 829 (1973), and we look to federal cases interpreting that statute to assist us in construing the New Hampshire statute. *See, e.g., id.* at 315–18, 307 A.2d at 829–30; *State v. Lamontagne*, 136 N.H. 575, 578, 618 A.2d 849, 851 (1992).

The federal law's exception for equipment furnished and used in the ordinary course of business is virtually identical to RSA 570-A:1, IV(a)(1) (Supp. 1993). Under Title III, an electronic, mechanical, or other device does not include

> any telephone . . . or any component thereof, . . . furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business . . . .

18 U.S.C.A. § 2510(5)(a)(i).

In *Newcomb v. Ingle*, 944 F.2d 1534 (10th Cir. 1991), a defendant-mother had eavesdropped on telephone conversations between her son and her ex-husband. The Tenth Circuit affirmed the dismissal of the son's Title III action, finding that the exemption contained in 18 U.S.C. § 2510(5)(a)(i) "is indicative of Congress's intention to abjure from deciding a very intimate question of familial relations, that of the extent of privacy family members may expect within the home vis-a-vis each other." *Id.* at 1536 (quotation omitted).

Other jurisdictions have also found that Congress did not intend Title III to proscribe eavesdropping via one's own extension telephone regularly used in the home. *See, e.g., Anonymous v. Anonymous*, 558 F.2d 677, 678–79 (2d Cir. 1977). In *Anonymous v. Anonymous*, the defendant-father had tape-recorded telephone conversations between his daughter and his estranged wife. *Anonymous*, 558 F.2d at 678. The Second Circuit affirmed the dismissal of the wife's Title III action, noting that the father's eavesdropping "would clearly not be prohibited if it consisted merely of listening into [*sic*] his wife's and daughter's telephone conversations from an extension phone in his apartment. Congress explicitly exempted such activity from coverage by the Act. *See* 18 U.S.C. § 2510(5)(a)(i)." *Anonymous*, 558 F.2d at 678 (footnote omitted).

We find the analysis of these courts persuasive. Thus we interpret RSA 570-A:1, IV(a)(1) (Supp. 1993) as creating an absolute exception for extension telephones used in the home by the user or subscriber.

*Affirmed.*

JOHNSON, J., with whom BATCHELDER, J., joined, concurred specially; the others concurred.

JOHNSON, J., concurring specially: I agree that RSA 570-A:1, IV(a)(1), which exempts telephones used "in the ordinary course of [the subscriber's or user's] business," embraces extension telephones used

in the home. However, I disagree with the majority's espousal of an unconditional exception for such extension telephones.

Federal courts considering eavesdropping in commercial settings regularly engage in case-by-case analysis in evaluating the ordinariness of a particular instance of telephone interception. *See, e.g., Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 582–83 (11th Cir. 1983); *Briggs v. American Air Filter Co.*, 630 F.2d 414, 420 (5th Cir. 1980); *Campiti v. Walonis*, 611 F.2d 387, 392 (1st Cir. 1979).

I see no rationale for employing a case-by-case analysis in commercial but not domestic settings. *See People v. Otto*, 831 P.2d 1178, 1190 (Cal.), *cert. denied*, 113 S. Ct. 414 (1992). Thus, I would reject a general approach that would permit eavesdropping in domestic settings, regardless of the particular circumstances. Instead I would consider whether the participants to the overheard conversation had a subjective expectation that their discussion would remain private, and whether such expectations were ones that society deems reasonable. *See* RSA 570-A:1, II (1986); *cf. State v. Lamontagne*, 136 N.H. 575, 579, 618 A.2d 849, 851 (1992) (legislature intended RSA chapter 570-A to protect right to privacy); *Kratz v. Kratz*, 477 F. Supp. 463, 476 (E.D. Pa. 1979) (Title III protects right of privacy in domestic context). I believe that reasonable expectations of privacy distinguish extension telephone uses that may be viewed as ordinary from those which are unacceptable "in a society that values and seeks to protect conversational privacy." J. CARR, THE LAW OF ELECTRONIC EAVESDROPPING § 3.6, at 3-105 (1990).

Here, the victim lacked a single, consistent caretaker. At fourteen, the victim had stopped living with her mother. She resided with her grandmother for approximately a week before moving to a shelter for girls. The victim remained in the shelter for approximately two months before becoming the defendant's foster child. Carter and her husband had known the victim all her life. The victim had visited frequently with the Carter family and often had celebrated holidays at their home. Under the circumstances, the victim should have expected that Carter, an old family friend, would assume the role of guardian during the victim's visit.

Moreover, Carter's eavesdropping was limited in both purpose and time. She did not record the conversations. Her eavesdropping was not part of a general practice of monitoring telephone calls in her home. Carter had specific, well-founded suspicions about the defendant's relationship with the victim, and she eavesdropped only out of concern for the victim, a minor temporarily residing in her home.

A person who has illicit sexual relations with a minor cannot reasonably expect that the minor's caretakers will not try to obtain information concerning the minor's welfare by eavesdropping on potentially revealing telephone conversations. Accordingly, I would find

that Carter's eavesdropping occurred "in the ordinary course of [the subscriber's or user's] business," and that RSA 570-A:6 (1986) did not prohibit the admission of her testimony at trial.

BATCHELDER, J., joins in the special concurrence.