STATE OF MAINE

KENNEBEC, ss.

STATE OF MAINE

v.

TROY CORBIN,

        Defendant

RECEIVED AND FILED
KENNEBEC SUPERIOR COURT

MAR 1 4 2001

NANCY DESJARDIN
CLERK OF COURTS

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-00-402
D HM- KEN - 3/14/2001

ORDER ON MOTION
TO SUPPRESS

This matter is before the court on defendant's motion to suppress. Defendant has been indicted for class B marijuana cultivation and class C conspiracy to cultivate marijuana. Defendant seeks to suppress the product of a search conducted in execution of a warrant on a mobile home owned by another in which the defendant was living and, also, to suppress statements made by the defendant as fruits of illegal search.

On September 22, 2000, a sergeant with the Kennebec County Sheriff's Office presented to a Maine District Court Judge an affidavit and request for search warrant at the residence and premises of one Shane L. Wood in the town of Vassalboro. The premises contained a double-wide mobile home, a separate brown mobile home accessed by a driveway from a nearby highway, and a white mobile home also accessed by the other highway. The request also sought permission to search any vehicles driven or registered to Shane L. Wood or persons of vehicles arriving during the execution of the warrant and any out buildings on the premises. Property to be searched for included controlled drugs, most specifically marijuana, paraphernalia and other related items. As a result of the affidavit and request, a

search warrant was issued by the District Court Judge at 4:15 p.m. on September 22, 2000, authorizing the search for the property as described on "premises owned and or occupied by Shane L. Wood dob: 02/13/67." The warrant further directed that it be executed in the daytime and returned with inventory within 10 days.

A few days later the search warrant was executed. It is stipulated between the State and the defendant that at the time of the execution of the search warrant, the defendant, Troy Corbin, was living in the white mobile home accessed from the Cross Hill Road. It was further stipulated that the search of the mobile home continued even after the officers became aware that it was Mr. Corbin's residence.

The defendant argues that the consequence of the discovery by the officers that the mobile home was the residence of the defendant rather than an unoccupied structure caused the search to be a warrantless search and that there did not exist probable cause to search the "residence of Troy Corbin." Defendant relies upon the decision of the United States Supreme Court in *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, a 1987 case. In response, the State argues that it is not required to identify or be limited to the residential or nonresidential status of a dwelling provided there exists sufficient probable cause for the search and the identification of the structure is correct and consistent with the warrant. While, on its face, the issue seems to be centered on whether the identification of the premises to be searched is proper, it is this court's interpretation that the real issue is whether there existed probable cause with respect to the premises in question notwithstanding an unanticipated residency of a seeming innocent party.

2

In 1978, the United States Supreme Court decided the case of *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978). This case involved the execution of a search warrant on the offices of a student newspaper in order to obtain photographic evidence of assaults on police officers taking place in a violent occupation of a local hospital. The Supreme Court reversed the decision of the Court of Appeals by holding that the Fourth Amendment is not a barrier to warrants to search property "on which there is probable cause to believe that fruits, instrumentalities, or evidence of crime is located, whether or not the owner or possessor of the premises to be searched is himself reasonably suspected of complicity in the crime being investigated." *Id.* at 549-50. The Court goes on further to say, "Under existing law, valid warrants may be issued to search any property, whether or not occupied by a third party, at which there is probable cause to believe that fruits, instrumentalities, or evidence of a crime will be found. *Id.* at 554. Finally for our purposes, the Court goes on, "Search warrants are not directed at persons; they authorize the search of 'places[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." In so holding, the Court cited *United States v. Kahn*, 415 U.S. 143, 155 n.15 (1974).

The *Kahn* case involved a wire tap order which was challenged as amounting to a "virtual general warrant" without the necessary specificity. The court concluded that the federal wire tap law required the naming of a person in the applicable or interception order, "only when the law enforcement authorities have probable cause to believe that the individual is 'committing the offense" which the

3

wire tap is sought. *Id.* at 156. In its footnote on that page, the Court suggests an analogy in challenging the "general warrant" argument of the appellant. The footnote goes on to say:

> If a warrant had been issued, upon a showing of probable cause, to search the Kahn residence for physical records of gambling operations, there could be no question that a subsequent seizure of such records bearing Minnie Kahn's handwriting would be fully lawful, despite the fact that she had not been identified in a warrant or independently investigated. In fact, as long as the property to be seized is described with sufficient specificity, even a warrant failing to name the owner of the premises at which a search is directed, while not the best practice, has been held to past muster under the Fourth Amendment.

The Court citing *Hanger v. United States,* 398 F.2d 91, (8th Cir.) and others. The footnote also directs the reader's attention to *United States v. Fiorella,* 468 F.2d 688 (2nd Cir.), "The Fourth Amendment requires a warrant to describe only 'the place to be searched, and the person or things to be seized,' not the persons from whom things will be seized."

Subsequent to *Zurcher,* the Supreme Court decided *Garrison* in 1987. In that case, the officers had a warrant to search, "The person of Lawrence McWebb and 'the premises known as 2036 Park Avenue, third floor apartment.'" When the police arrived to execute the warrant, they discovered that the third floor, in fact, had two apartments, one occupied by McWebb and the other by the defendant Garrison. After concluding that the officers clearly did not have a warrant to search the apartment of Garrison, the court sustained the refusal to suppress on the grounds of the good faith of the officers in making every attempt to determine the appropriate premises and innocently finding themselves in the wrong apartment. Defendant

4

suggests that the instant circumstances do not contain evidence of good faith on the part of the officers inasmuch as they continued the search of the mobile home notwithstanding their new discovery that it was the residence of this defendant rather than simply owned or occupied by the target of defendant. Defendant further argues that the fact that *Zurcher* is not cited in the *Garrison* case suggests that *Zurcher* is more limited in its scope and effect than would be appropriate in a mistaken identity case. Defendant also cites *McGlinchey v. Barrows*, 41 Me. 74, an 1856 case, for the proposition that, "A warrant to search the dwelling house of a person, only authorizes the officer to search the house in which such person lives; and if he searches a house hired and occupied by another, though owned by such person, he is guilty of trespass."

The court is satisfied that *Garrison* and *McGlinchey* are cases decided on the matter of identification of the premises to be searched and are fully consistent with *Zurcher*, in that *Zurcher*, and the case at hand, have no infirmity to the identification of the premises in question, thereby rendering *Garrison* and *McGlinchey* inapplicable. It is undisputed that the search was executed at the mobile home owned by Mr. Wood and precisely the appearance and location as described. It is also clear that the warrant authorized the search of the premises owned and/or occupied by Mr. Wood. The relevancy as to whether it may be occupied by another is questionable. Further, probable cause created by the many facts outlined in the 14-page affidavit and request for search warrant clearly articulated that the justification of the search of the mobile home was premised, to a large degree, upon the alleged

5

activities of Mr. Wood within that mobile home and not dependent upon Mr. Wood being in residence in that mobile home or personally occupying that mobile home. Further, there is a representation in the affidavit of information that there would be another person, a stranger to the process, who occupied one of the three mobile homes in question and whose job was to tend to the contraband sought by the warrant. Therefore, the probable cause related to the precise location to be searched notwithstanding any other status that might exist at the time of the search, including the fact that this defendant was in residence in that mobile home.

This must be distinguished from the circumstances in *McGlinchey* in which it was clear that the target of the search warrant was the store and home of the accused for purposes of keeping illegal alcohol in accordance with the stated facts of probable cause. When the officers searched the premises of another person, notwithstanding its part of the same building, they had no probable cause to conduct that search.

As so in *Garrison:* the officers had no probable cause to search the apartment of Mr. Garrison even though it occupied part of the third floor of the building where the officers did have probable cause to search the apartment of Mr. McWebb. In the instant case, nothing about the residency of Mr. Corbin removed the probable cause existent in the officers for purposes of the warrant.

It is understood by the court that the statements by the defendant against self interest made during the course of the search are sought to be suppressed as being the fruits of an illegal search. Inasmuch as the court has found the search to be

6

lawful and will deny the motion to suppress the products of the search, to the extent the defendant seeks suppression of his confession solely on the grounds of the status of the search, that suppression should be denied as well.

For all the reasons stated herein, the entry will be:

Defendant's motion to suppress is DENIED.

Dated: March 14, 2001

Donald H. Marden
Justice, Superior Court

7

TROY CORBIN
RR 1 BOX 104 KNOWLES ROAD
ELGRADE ME 04917

KENNEBEC, ss.
Docket No AUGSC-CR-2000-00402

DOCKET RECORD

DOB: 07/05/1973
Attorney: SUMNER LIPMAN
        RETAINED 12/11/2000

State's Attorney: LARA NOMANI

Filing Document: INDICTMENT
Filing Date: 12/11/2000

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

1   MARIJUANA CULTIVATION                   09/25/2000 VASSALBORO
    17-A   1117(2)(A)          Class B


2   CONSPIRACY TO COMMIT A CLASS B CRIME    09/25/2000 VASSALBORO
    17-A   151(1)              Class C

## Docket Events:

12/12/2000 FILING DOCUMENT - INDICTMENT FILED ON 12/11/2000


12/12/2000 Charge(s):  1,2
        HEARING - ARRAIGNMENT SCHEDULED FOR 12/19/2000 @ 8:15


12/12/2000 Charge(s):  1,2
        SUMMONS - SUMMONS TO APPEAR FOR ARRAIGN ISSUED FOR 12/12/2000 @ 8:15


12/14/2000 ATTORNEY - RETAINED ENTERED ON 12/11/2000


        Attorney:  SUMNER LIPMAN
        ATTORNEY FOR PARTY 002 DEFENDANT
12/19/2000 Charge(s):  1,2
        HEARING - ARRAIGNMENT SCHEDULED FOR 12/19/2000


        NOTICE TO PARTIES/COUNSEL
12/20/2000 Charge(s):  1,2
        HEARING - ARRAIGNMENT HELD ON 12/19/2000
        NANCY MILLS , JUSTICE
        Attorney:  SUMNER LIPMAN


        DA:  ALAN KELLEY        Reporter: JANETTE COOK
        Defendant Present in Court
        READING WAIVED.  DEFENDANT INFORMED OF CHARGES.  COPY OF INDICTMENT/INFORMATION GIVEN TO
        DEFENDANT.  21 DAYS TO FILE MOTIONS
                                ANDREW BENSON, AAG STOOD IN AT ARRAIGNMENT
        FOR LARA NOMANI, AAG.
12/20/2000 Charge(s):  1,2
        PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 12/19/2000


12/20/2000 BAIL BOND - CONDITIONS OF RELEASE ISSUED ON 12/19/2000

        DEFENDANT IS TO HAVE NO CONTACT WITH SHANE WOOD;                    DEFENDANT IS TO

HAVE NO USE OR POSSESSION OF ALCOHOL AND SCHEDULED DRUGS    AND IS TO SUBMIT TO SEARCH AND
TESTING;                                        DEFENDANT IS TO ENTER INTO LIMESTONE
IMMEDIATELY AND COMPLETE THE PROGRAM, THEN TO POST $10,000.00 SURETY;   IF HE DOES NOT
COMPLETE THE PROGRAM THAN  HE IS TO GO TO JAIL.

12/26/2000 MOTION - MOTION FOR DISCOVERY FILED BY DEFENDANT ON 12/26/2000


01/12/2001 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 01/10/2001


01/12/2001 MOTION - MOTION FOR DISCOVERY FILED BY DEFENDANT ON 01/10/2001


02/21/2001 BAIL BOND - SURETY BAIL BOND FILED ON 02/16/2001


        Bail Amt:  $10,000        Surety Type: SINGLE REAL ESTATE        Surety Value:  $0
        County: KENNEBEC          County Book ID: 6402 Book Page: 278
        Date Bailed: 02/16/2001   Prvdr Name: RUTH A CORBIN
        Lien Issued: 02/14/2001   Rtrn Name: RUTH A CORBIN
        Lien Discharged:

## Conditions of Bail:
Have no contact with...

        1    SHANE   WOOD

        and the family of said person(s).

03/20/2001 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 03/26/2001

        NOTICE  TO PARTIES/COUNSEL
03/20/2001 HEARING - MOTION TO SUPPRESS HELD ON 02/26/2001
        DONALD H MARDEN , JUSTICE
        Attorney:  GREGG BERNSTEIN

        DA:  LARA NOMANI        Reporter: PHILIP GALUCKI
        Defendant Present in Court
        TAKEN UNDER ADVISEMENT
03/20/2001 MOTION - MOTION TO SUPPRESS DENIED ON 03/14/2001
        DONALD H MARDEN , JUSTICE
        COPY TO PARTIES/COUNSEL
03/20/2001 MOTION - MOTION FOR DISCOVERY GRANTED ON 03/13/2001
        DONALD H MARDEN , JUSTICE
        COPY TO PARTIES/COUNSEL                                        DEF MAY HAVE
        ACCESS TO VIDEOTAPE FOR PURPOSES OF MAKING A COPY TO BE USED  SOLELY IN THE DEFENSE OF
        THIS CASE AND FOR NO OTHER PURPOSE.


A TRUE COPY
ATTEST: _____
                    Clerk